Court of Appeals
Fourth Court of Appeals District of Texas
San Antonio




# OPINION

No. 04-12-00102-CV

**CAMP MYSTIC, INC.**; Richard G. Eastland; Natural Fountains Properties, Inc.,
Appellants

v.

S. Stacy **EASTLAND** and Nancy Eastland Leaton,
Appellees

From the 198th District Court, McCulloch County, Texas
Trial Court No. 2011122
Honorable David Peeples, Judge Presiding

Opinion by:     Sandee Bryan Marion, Justice

Sitting:        Sandee Bryan Marion, Justice
                Phylis J. Speedlin, Justice
                Marialyn Barnard, Justice

Delivered and Filed:  October 17, 2012

REVERSED AND REMANDED

This is an appeal from an order entered in favor of appellees, Stacy Eastland and Nancy

Leaton that (1) granted a temporary injunction, (2) appointed an "agent" for one of the

appellants, and (3) denied appellants' motion to compel arbitration.[1]  We reverse the trial court's

---

[1] Although the three rulings challenged on appeal were all contained within a single order, appellants filed three separate notices of accelerated appeal in the Austin Court of Appeals. All three appeals were later transferred to this court and the three appeals were consolidated into a single cause number. On July 20, 2012, the trial court issued an order modifying the temporary injunction and appointing agent. This new order concerns the same subject matter and supplants the original order.

order, dissolve the temporary injunction, and remand this case to the trial court for further proceedings.

## FACTUAL BACKGROUND

Camp Mystic is a summer camp for girls in Hunt, Texas. Until June of 1998, it was a family owned and operated company named Camp Mystic, Inc. ("Old CM"). In 1998, the family restructured Old CM when they created a new company, Camp Mystic, Inc. ("CMI") and changed Old CM's name to Natural Fountain Properties, Inc. ("NFP"). After the restructure, NFP continued to own the real estate where the camp was located and leased it to CMI. Richard Eastland ("Dick") and his wife Willetta Eastland ("Tweety") are the sole owners of CMI and they run the Camp Mystic operations. NFP currently has five shareholders: Dick (majority – 52%), Stacy Eastland (22%), Nancy Leaton (22%), George Stacy (2%), and Philip Stacy (2%).[2] The current board of NFP is composed of three members: Richard Capps (president), Rob Frazer, and George Stacy.

Several years after the 1998 reorganization, a dispute arose between NFP's minority shareholders and Dick regarding the amount of rent CMI paid to NFP under a lease executed in 1998 ("1998 lease"). *Eastland v. Camp Mystic, Inc.*, Nos. 04-08-00675-CV, 04-08-00741-CV, 2009 WL 260523, at * 1 (Tex. App.—San Antonio Feb. 4, 2009, pet. denied) (mem. op., not designated for publication). Dick, Tweety, and CMI filed a declaratory judgment action against NFP and some of the individual shareholders of NFP, seeking a declaration of CMI's rights under the 1998 lease. *Id.* Stacy Eastland and Nancy Leaton (hereinafter "appellees") also brought various counterclaims against Dick, Tweety, and CMI, individually and derivatively on behalf of NFP as minority shareholders. *Id.* Among other things, appellees asserted breach of

---

[2] Dick, Stacy Eastland, and Nancy Leaton are siblings. George Stacy and Philip Stacy are cousins of Dick, Stacy Eastland, and Nancy Leaton.

fiduciary duty and shareholder oppression claims against Dick. *Id.* They alleged that Dick's control as the majority shareholder of NFP, the landlord, and as the owner of CMI, the tenant, had resulted in a leasing arrangement that benefitted CMI to NFP's detriment. *Id.* On February 10, 2011, a jury in Kerr County found in favor of Dick, Tweety, and CMI on all claims asserted by appellees, including shareholder oppression and breach of fiduciary duty.

Several months after the trial, the trial court partially vacated the jury's verdict and granted a new trial on appellees' claims against Dick, Tweety, and CMI for breach of fiduciary duty and shareholder oppression.[3] The court entered a final judgment on the jury's other findings in favor of Dick, Tweety, and CMI, then severed the shareholder oppression and breach of fiduciary duty claims into a new cause and transferred the case to McCulloch County.

After the trial court realigned the parties, appellees (now plaintiffs) filed their amended petition, re-alleging shareholder oppression and breach of fiduciary duty claims against Dick, CMI, and NFP (hereinafter "appellants"). At this time, an amended lease executed in 2008 ("Second Amendment") was set to expire on September 30, 2011. To avoid operational instability and to ensure the continued operation of the summer camp, CMI negotiated the Third Amendment, a two-year lease to extend the 2008 lease from October 1, 2011, until September 1, 2013. However, on August 18, 2011, appellees sought a temporary restraining order ("TRO") to prevent execution of the Third Amendment, which was on NFP's agenda to be voted-on at an

---

[3] On August 6, 2011, the trial court signed a "Statement of Reasons for Granting Partial New Trial." On September 28, 2011, this court denied appellants' petition for writ of mandamus, holding we did not have the authority under *In re Columbia Med. Ctr. of Las Colinas*, 290 S.W.3d 204 (Tex. 2009) (orig. proceeding), to provide a merit-based review on mandamus of the trial court's reasons for granting a new trial. *In re Camp Mystic, Inc.*, No. 04-11-00694-CV, 2011 WL 4591194, at *1 (Tex. App.—San Antonio October 5, 2011, orig. proceeding) (per curiam). Appellants have since filed a petition for writ of mandamus with the Texas Supreme Court arguing that the trial court's reasons for granting the new trial are not valid and this abuse of the trial court's discretion should be reviewed and corrected by mandamus. On February 17, 2012, the supreme court stayed all trial court proceedings (including the April 23, 2012 new trial). The court requested a response, which was filed on March 1, 2012.

August 28, 2011 board meeting. The trial court denied the TRO and a majority of the NFP board approved the Third Amendment at the board meeting.

After the NFP board's approval of the Third Amendment, appellees supplemented their petition and application for equitable relief. They alleged Dick had committed shareholder oppression by improperly influencing the NFP board and causing the board to enter into the Third Amendment, which they claimed (1) provided less than half the rent the NFP property would draw in a true arms-length transaction; (2) gave CMI control of more than 500 acres of land not necessary to camp operations, which deprived NFP of the chance to pursue lucrative transactions with the camp's neighbors; and (3) unreasonably restricted the NFP minority shareholders' recreational use "of their own property, including the property not needed for camp operations." Appellees also sought a "special advisor or receiver" to act in NFP's best interest by "setting a fair rent for the camp property and maximizing the return to NFP from the non-camp property." The petition also alleged that Dick had violated his fiduciary duty to NFP, resulting in lost rent damages from September 1, 2010, through the date of trial. In the supplemental application for equitable relief, appellees asked for a temporary injunction to rescind the Third Amendment and for the appointment of a receiver to negotiate a short-term lease with CMI (until the trial on the merits) that would provide "fair" rent and preserve appellees' recreational rights.

Prior to the court's ruling on appellees' supplemental application for equitable relief, a dispute between the parties arose concerning the recreational access restrictions contained in the Recreational Use Addendum to the Third Amendment. The Recreational Use Addendum requires alternative dispute resolution to resolve such matters, but appellees filed a motion asking the trial court to determine the reasonableness of certain conditions contained in the Recreational

Use Addendum and that the agent be authorized to formulate reasonable rules for hunting and recreational access for future hunting seasons. In response, appellants filed a motion to stay the litigation and to compel arbitration pursuant to the terms of the Recreational Use Addendum.

After the hearings on appellees' supplemental application for equitable relief and appellants' motion to compel arbitration, the court enjoined the last eleven months of the twenty-three month Third Amendment.[4] The arbitration provision contained in the Recreational Use Addendum, however, was enjoined "for the remainder of the first year." Additionally, the court crafted and modified rules for recreational access during the first year of the Third Amendment (the period not enjoined).[5] The trial court's order also appoints an "Agent" to act in NFP's best interest, authorizing "the Agent" to negotiate a new lease (either with CMI or a new lessee) or a sale of all or part of the leased property. The order forbids NFP's board from undermining or contradicting "the Agent's" efforts. Appellants initiated this appeal following the trial court's order.[6]

## TEMPORARY INJUNCTION

On appeal, appellants assert the trial court abused its discretion in issuing the temporary injunction because there is no evidence of a probable right to relief and no evidence of imminent and irreparable harm. A temporary injunction is an extraordinary remedy that does not issue as a

---

[4] The court's reasoning for issuing the injunction for the last eleven months, as opposed to the entire twenty-three months of the Third Amendment, was "[t]o ensure [that] Camp Mystic has a location for camp [this] summer." As a result, the Third Amendment is enjoined from October 1, 2012, through September 1, 2013.

[5] The court's order modifies the recreational access rules during the period from September 17, 2011, through May 31, 2012. This order also states that "In the Spring of 2012, before the beginning of camp, the Court will address the issue of recreational access by minority shareholders during the 2012 camp session." As a result, on July 20, 2012, the court signed another order modifying the temporary injunction and setting additional recreational access rules during the period from May 25, 2012, through August 18, 2012.

[6] On appeal, NFP joins and adopts CMI and Dick's appeal addressing the temporary injunction and appointment of an "Agent." NFP does not join CMI and Dick's appeal challenging the trial court's refusal to refer recreational access disputes to arbitration.

matter of right. *Walling v. Metcalfe*, 863 S.W.2d 56, 57 (Tex. 1993). A temporary injunction serves to preserve the status quo of the litigation's subject matter pending trial on the merits. *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002). At the hearing for a temporary injunction, the applicant is not required to establish that it will prevail on final trial. *Walling*, 863 S.W.2d at 58. However, a temporary injunction should only issue if the applicant establishes (1) a cause of action against the defendant; (2) a probable right to the relief sought; and (3) a probable, imminent, and irreparable injury in the interim if the injunction is not granted. *Butnaru*, 84 S.W.3d at 204.

## A.  Probable Right to Relief

To prevail on a request for a temporary injunction, a movant must demonstrate a probable right to recover at the trial on the merits and probable injury in the interim if the injunction is not granted. *Walling*, 863 S.W.2d at 57; *Sun Oil Co. v. Whitaker*, 424 S.W.2d 216, 218 (Tex. 1968). An injunction is not improper merely because the evidence presented below conflicted; instead, the evidence need only reasonably support the movant's complaints. *Miller Paper Co. v. Roberts Paper Co.*, 901 S.W.2d 593, 598 (Tex. App.—Amarillo 1995, no writ). To establish a probable right to recover, a movant must have a cause of action for which it may be granted relief. *Walling*, 863 S.W.2d at 58.

Here, we will assume without deciding that appellees properly demonstrated a probable right to relief because we believe appellees have not adequately demonstrated the remaining element necessary for the issuance of a temporary injunction—imminent and irreparable harm.

## B.     Imminent and Irreparable Harm

Probable injury is established by tendering evidence of imminent harm, irreparable injury, and an inadequate legal remedy. *Miller Paper Co.*, 901 S.W.2d at 597. An irreparable

injury is defined as an injury for which compensation cannot be made, or for which compensation cannot be measured by any certain pecuniary standard. *Tri-Star Petroleum Co. v. Tipperary Corp.*, 101 S.W.3d 583, 591 (Tex. App.—El Paso 2003, pet. denied). An adequate remedy at law is one that is as practical, complete, and efficient to the swift administration of justice as is equitable relief. *Id.*

In the order, the trial court found "that [the Third Amendment] will cause imminent and irreparable harm in at least three ways":

> (1) Rent – "[T]he rent under the lease is significantly less than the rent NFP would probably receive in a true arm's-length transaction. Potential lessees other than Camp Mystic were not seriously sought out or considered . . ."

> (2) Access – "[T]he [Third] Amendment unreasonably restricts the minority shareholders' recreational access, especially during the off-season."

> (3) Impact on Court's Equity Powers – "[T]he [Third] Amendment could limit this Court's ability to grant permanent equitable relief after trial. The Court has not yet determined whether to grant equitable relief, or what equitable relief might be appropriate, but a two-year lease would frustrate the Court's ability to use its equitable powers in this case to rectify a dysfunctional situation and perhaps help keep this family out of the courthouse in the future."

Appellants first argue that lost-rent revenue does not constitute irreparable harm because appellees have an adequate remedy at law for money damages. Next, appellants contend that restricted access to the leased property does not constitute imminent and irreparable harm. Last, appellants assert that the temporary injunction is not necessary to preserve the trial court's ability to grant permanent equitable relief.

### 1. Rent

The trial court determined the harm from the rent CMI paid to NFP under the Third Amendment was imminent and irreparable because

> [t]o recover lost rent revenue would require the minority shareholders to sue the majority NFP directors and seek the lost rent as damages. It is preferable to have

the rent negotiated by an independent agent acting for NFP than to try to rectify the matter afterward with a suit for damages.

Appellants, however, complain that the injury is not irreparable because appellees are still able to secure a potential money judgment—even if it is not "preferable"—for any damages incurred if a jury later determines NFP should have received a higher rent from CMI. Thus, appellants contend appellees have an adequate remedy at law for any lost-rent revenue. Appellees counter that a court can grant a temporary injunction to prevent a multiplicity of suits arising from the same subject matter.

Generally, a temporary injunction is not available to secure a potential money judgment when a party has other existing legal remedies. *See Barnstone v. Robinson*, 678 S.W.2d 562, 563 (Tex. App.—Houston [14th Dist.] 1984, writ dism'd); *Home Sav. Assoc. v. Ramirez*, 600 S.W.2d 911, 913 (Tex. Civ. App.—Corpus Christi 1980, writ ref'd n.r.e.). We recognize appellees' contention that, although other legal remedies may exist, "[i]t is certainly the rule in this state that equity will take cognizance of a controversy to determine the rights of all of the parties, and grant the relief required to meet the ends of justice in order to prevent a multiplicity of suits." *Rogers v. Daniel Oil & Royalty Co.*, 130 Tex. 386, 110 S.W.2d 891, 895-96 (1937). However, in the record before this court, there is no evidence of a threat of additional lawsuits involving identical claims or defenses. Instead, we believe appellees' claim for lost-rent can be resolved in the underlying pending suit and without "a multiplicity of suits." *Cf. id.* at 895 (noting that without the injunction, "this company would have to pay these taxes under protest every month, and then file suit in Travis county within ninety days after each of such payments. It would follow that the company would probably have to file a number of suits involving the same [subject matter] in order to protect its rights."); *Galveston, H. & S.A. Ry. Co. v. Dowe*, 70 Tex. 5, 7 S.W. 368, 371 (1888) (granting injunction where party threatened to file separate lawsuits on

thirty identical and unassigned claims "in order to vex and harass the appellant by a multiplicity of actions").

Accordingly, we conclude that any lost-rent damages does not amount to irreparable injury because an adequate remedy at law—a claim for damages in the underlying suit—is available for any potential lost rent. *See Houck v. Kroger Co.*, 555 S.W.2d 803, 806 (Tex. Civ. App.—Houston [14th Dist.] 1977, writ ref'd n.r.e.) ("Such monetary harm, however, would not constitute irreparable injury, and an adequate remedy at law for damages does exist.").[7]

### 2. Access

The trial court determined that the harm from the provisions contained in the Recreational Use Addendum was imminent and irreparable because access to the property could not be replaced. The trial court based this in part on testimony from Stacy Eastland, one of the appellees and a minority shareholder, who testified that he has cancer and is not sure "how much time he has left to enjoy his grandchildren on the NFP property." The court determined that "[d]epriving him and Nancy [Leaton] of reasonable recreational access for two years would cause irreparable harm." Appellants argue that the trial court's decision is improper because appellees have not produced evidence they will be irreparably harmed nor do the minority shareholders have a legal right to access the land.

At the hearing on the temporary injunction, the minority shareholders testified to the following injuries. George Stacy ("George") testified that, prior to Richard Capps's appointment as president of the NFP board, he had made requests for access and was denied without any explanation. Nonetheless, he did not expand on how and when he was denied access. When questioned about the Recreational Use Addendum's allowance that "Landlord Parties will have

---

[7] Appellees also argue that the Third Amendment does not guarantee shareholder dividends, resulting in substantial economic hardship for those minority shareholders who financially depend on the dividends. Again, we conclude minority shareholders could recover possible lost dividends in a suit for damages. *See Houck*, 555 S.W.2d at 806.

unfettered access to the Guadalupe River through Holcomb Fields, and reasonable access to Goat Hill," George testified he did not feel that was "a reasonable accommodation for the minority shareholders' access to the Guadalupe [River]" because "[i]t's just a very small piece . . . [i]t floods" and "you would have to have a . . . brush cutter to go in there and try to access [it]." Nancy Leaton testified she has not had "access out there like [she] expected." However, based on her testimony, it appears she was not denied access to the property, but was instead, on three occasions over a two-month period, denied the ability to stay overnight in the cabins and buildings on the property. Leaton testified she was denied the overnight stay in these buildings because someone else was using them. Stacy Eastland testified he was denied access when given a gate code that "turned out not to be the gate code." However, Eastland testified he was allowed access "two hours later [when he finally] got the [correct] gate code." Eastland also testified that he is sixty-three years old and has cancer and he does not want to spend two years of his life "with Dick having complete control over [h]is use of [the] property during camp for two years." Philip Stacy testified he had recently hunted on the NFP property. However, he testified he received Dick's proposed hunting rules and he "read where he had to [hunt] in a blind, and that definitely turned [him] off." He also testified the hunting rules "are extremely restrictive" and "if [he] had to comply with the rules proposed by Dick in order to hunt at NFP . . . [he didn't] think [he] would enjoy it, so [he] would probably abstain."

Generally, temporary injunctive relief is not available if the injury is one of convenience. *Long v. Long*, 814 S.W.2d 227, 228-29 (Tex. App.—San Antonio 1991, no writ); *Arledge v. Ricks*, No. 04-08-00020-CV, 2008 WL 1882806, at *2 (Tex. App.—San Antonio Apr. 30, 2008, no pet.) (mem. op., not designated for publication) ("While inconvenient, [appellants] have at least limited access to their property during the pendency of their lawsuit. Because their

infrequent use will not be entirely prohibited in the interim, we cannot conclude the trial court abused its discretion in denying the temporary injunction."); *Trada Partners VI, LP v. Vogt*, No. 04-06-00723-CV, 2007 WL 163181, at *2 (Tex. App.—San Antonio Jan. 24, 2007, no pet.) (mem. op., not designated for publication) (Vogt could access his one-acre parcel of land through his twenty-acre parcel; therefore, injury was only one of inconvenience); *cf. Garcia v. Gonzalez*, No. 04-95-00971-CV, 1996 WL 425995, at * 4 (Tex. App.—San Antonio July 31, 1996, no pet.) (mem. op., not designated for publication) (determining appellee "will not be merely inconvenienced if the temporary injunction is lifted; she will be completely cut off from her property"). In this case, while it is inconvenient for appellees to access or hunt on the property, we conclude they are not denied use of the property under the Recreational Use Addendum provisions.

Appellees argue that a potential denial of access to the property is not a mere inconvenience because they have enjoyed unrestricted access for more than fifty years. Appellees also assert that the Recreational Use Addendum will give Dick and CMI complete control to restrict access at the end of the Third Amendment's term because access rules "will start with a clean slate and shall be subject to the further agreement of the Tenant [(CMI)]." However, Texas law is clear that a tenant "has the possession of the premises for a fixed time exclusive of the landlord." *See Brown v. Johnson*, 118 Tex. 143, 12 S.W.2d 543, 545 (1929) ("During the term of his lease, the owners of the fee had no right of entry thereon; the exclusive right of possession being in the [tenant]."). Also, the court's order regarding the Recreational Use Addendum never states that access is completely denied and will be denied in the future to the minority shareholders—only that "depriving [Stacy] and Nancy of reasonable recreational access for two years would cause irreparable harm." However, "fear or apprehension of the

possibility of injury is not sufficient; injunctive relief requires the plaintiff to prove the defendant has attempted or intends to harm the plaintiff in the future." *Jones v. Jefferson Cnty.*, 15 S.W.3d 206, 213 (Tex. App.—Texarkana 2000, pet. denied).

Importantly, no lease prior to the Recreational Use Addendum specifically detailed the process for recreational access to minority shareholders. Richard Capps, appointed as President of the NFP board in 2009, testified that, since he was appointed to the board, to his knowledge a minority shareholder had never been denied access. He also believed Dick had been more restrictive before the Third Amendment. Capps stated that under the Third Amendment, he was "proud that [the NFP board was] able to get something negotiated to act as a floor, a minimum, and for the first time within a lease there are written recreational privileges." Prior to the Third Amendment, access was granted on a gratuitous basis. Accordingly, the Recreational Use Addendum was the first time NFP shareholders and immediate family members were specifically granted recreational access subject to certain written conditions and terms.

We conclude the record does not support a finding that access has been or will definitely be denied to Stacy, Nancy, or any of the other minority shareholders during the Third Amendment's term. Instead, the Recreational Use Addendum sets up the parameters for access to minority shareholders both in the camping and non-camping seasons. While obtaining permission prior to access or observing the hunting restrictions may be considered burdensome and inconvenient by appellees, they are still allowed access to the property. Therefore, we conclude appellees failed to establish irreparable harm.

### 3. Equitable Remedy

The trial court also determined imminent and irreparable harm would result because the Third Amendment "would hinder the Court's ability to fashion longer-term equitable remedies."

Appellants, however, argue that the temporary injunction is not necessary to preserve the trial court's ability to grant permanent equitable relief.

In finding imminent and irreparable harm would result in the absence of the temporary injunction, the trial court failed to specify how its ability to grant permanent equitable relief after trial would be limited. *See* TEX. R. CIV. P. 683 ("Every order granting an injunction . . . shall set forth the reasons for its issuance; shall be specific in terms . . ."). More importantly, Texas Rule of Civil Procedure 683 requires every order granting an injunction to "set forth the reasons why the court deems it proper to issue the writ to prevent injury *to the applicant* in the interim." *Transp. Co. of Tex. v. Robertson Transps., Inc.*, 152 Tex. 551, 261 S.W.2d 549, 553 (1953) (emphasis added); *see also Fasken v. Darby*, 901 S.W.2d 591, 593 (Tex. App.—El Paso 1995, no writ) ("A valid injunction must identify the probable interim injury *Appellees* will suffer.") (emphasis added). Here, the alleged potential injury as stated by the trial court applies only to the trial court, not to appellees.

Further, the trial on the merits has not yet occurred; thus, the potential exists for a jury to once again find in favor of Dick and CMI. While noble, the trial court's desire "to rectify a dysfunctional situation and perhaps help keep this family out of the courthouse in the future" is not a legal basis for granting equitable relief. *See State v. Morales*, 869 S.W.2d 941, 942 (Tex. 1994) ("Equity jurisdiction does not flow merely from the alleged inadequacy of a remedy at law, nor can it originate solely from a court's good intentions to do what seems 'just' or 'right.'"). We conclude the trial court's potential inability to grant future equitable relief does not constitute irreparable harm to appellees.

Because appellees have not demonstrated a probable injury will result if the Third Amendment is not enjoined, we conclude the trial court erred in granting the temporary injunction. Accordingly, the temporary injunction should be dissolved.

## APPOINTMENT OF AN "AGENT" FOR NFP

The appellees also filed an application for the appointment of a "special advisor" or "receiver" for NFP. The court appointed Charles H. Jackson, a San Antonio attorney, "as agent for NFP ('Agent')" and stated as follows:

> This Agent is not a receiver. He will not take possession of or acquire title to any of NFP's property, although he will have access to NFP's records as described below. The NFP board will remain in place and will decide all matters that are not delegated to the Agent hereunder, but it may not take any action that undermines or contradicts the Agent's efforts to negotiate and determine reasonable rent for NFP and enter lease agreements.

The trial court specifically authorized Mr. Jackson to: "negotiate a long-term (or short-or-medium-term) lease" between NFP and Camp Mystic or any other potential tenant; (2) lease "all or part of NFP's property to one or more different tenants," including, but not limited to NFP; and (3) "negotiate with other parties concerning the sale, lease, restriction, or other transactions affecting all or part of NFP's property." In addition, the trial court "suggested" Mr. Jackson consider the following in any lease: (1) arbitration of disputes under the lease; (2) recreational access for the NFP minority shareholders; and (3) "some mechanism to insure that the lease binds everyone and is not easily modified, perhaps requiring consent by a super-majority of NFP's shareholders."

In appointing Mr. Jackson to act for NFP, the court found as follows: (1) "[b]ecause of all the circumstances of this case, there is an overwhelming need for an agent to act for NFP who is not subject to either *removal or pressure* from Dick," (2) the close relationships between Capps, Frazer, Dick, and Camp Mystic "make it difficult if not impossible for the NFP board to truly act

independently and look out for only NFP's best interests," and (3) "NFP's best interest will be served by the appointment of an agent who has no relationship with Camp Mystic, its owners, employees or their families, and no relationship with any of the plaintiffs, their families, or their attorneys, and who can independently determine which transactions are in NFP's best interests and then pursue them."

On appeal, appellants assert the trial court erred because (1) the court improperly relied on evidence from a previous trial that was not introduced at the hearing on the application for the appointment of an agent, (2) there is no evidence to support the finding that NFP could not act independently, and (3) there is no evidence of a threatened serious injury to the property.

## A.    Evidence From Prior Trial

A footnote to the section of the order entitled "Background and Context" states "[t]his section is substantially copied from the court's 'Statement of Reasons for Granting Partial New Trial.'"  Appellants assert the trial court erred by relying on its Statement of Reasons because by doing so the trial court improperly relied on evidence not introduced at the hearing.  Appellees counter that the court's Statement of Reasons is a court record upon which the trial court could rely.

A trial court may generally take judicial notice of its own records in a case involving the same subject matter between the same parties.  *Escamilla v. Estate of Escamilla*, 921 S.W.2d 723, 726 (Tex. App.—Corpus Christi 1996, writ denied).  However, the trial court cannot take judicial notice of testimony from a previous proceeding at a subsequent proceeding unless the testimony is admitted into evidence at the subsequent proceeding.  *Id.*; *Paradigm Oil, Inc. v. Retamco Operating, Inc.*, 161 S.W.3d 531, 539-540 (Tex. App.—San Antonio 2004, pet. denied).  Accordingly, in order for testimony at a prior hearing or trial to be considered at a

subsequent proceeding, the transcript of that testimony must be properly authenticated and entered into evidence. *Paradigm Oil*, 161 S.W.3d at 540; *Escamilla*, 921 S.W.2d at 726.

Also, a "trial judge's own memory of what the witness may have said at the prior proceeding is insufficient to substitute for an accurate and properly authenticated record of that testimony. A fact is not capable of accurate and ready confirmation simply because a trial judge remembers that a witness testified to it in trial. While a court may take judicial notice of the existence of the testimony in [a prior] trial, . . . a court may not take judicial notice of the truth of the factual content of that testimony because its accuracy can reasonably be questioned." *In re C.L.*, 304 S.W.3d 512, 515 (Tex. App.—Waco 2009, no pet.).

In this case, to the extent the trial court may have relied on its recollection of testimony from the prior trial or from other prior hearings not associated with appellees' request for equitable relief, the trial court erred because that testimony was never offered or admitted into evidence at this subsequent hearing. Therefore, we must determine whether the evidence produced at the hearings on appellees' request for equitable relief—at which several witnesses testified—supports the trial court's findings.

**B.     Did the Trial Court Abuse its Discretion**

Despite the trial court's statement in its order that Mr. Jackson "is not a receiver," on appeal, appellants contend that he is a "receiver," and, therefore, the court's ruling is subject to the higher burden of proof applicable to the appointment of receivers. Appellants argue that the burden of proof is higher when appointing a receiver because a receiver should only be appointed if there is some serious injury threatened to the applicant. *See Gunther v. Dorff*, 296 S.W.2d 638, 640 (Tex. Civ. App.—Waco 1956, writ dism'd).

We find no Texas authority, and appellees have not provided any authority, under which a trial court may appoint an "agent" to act for a company under the circumstances presented here. Generally, an agency is a consensual relationship: the agent consents to the control of another, the principal, and the principal manifests consent that the agent shall act for the principal. *Republic Bankers Life Ins. Co. v. Wood*, 792 S.W.2d 768, 778 (Tex. App.—Fort Worth 1990, writ denied). Here, there is no evidence NFP consented—as the "principal"—to having Mr. Jackson act as its "agent." Also, the order appointing Mr. Jackson demonstrates NFP had no control over Mr. Jackson. Instead, pursuant to the order, Mr. Jackson, subject to court approval, controlled NFP's sole asset, the land. Nevertheless, we need not decide whether Mr. Jackson is an "agent" or a "receiver" because in either event we must review the evidence from the hearing regarding his appointment to determine whether the trial court abused its discretion.

In appointing Mr. Jackson, the trial court did not rely on any particular statute. Instead, we believe the appointment was equitable in nature because the language of the order appointing Mr. Jackson suggests that the purpose of the appointment was to protect the rights of the minority shareholders and because the trial court believed "Dick has oppressed the minority shareholders and breached his fiduciary duties." As stated previously, to the extent the trial court may have relied on its recollection of testimony from the prior trial or from other prior hearings not associated with appellees' request for equitable relief, the trial court erred. Thus, we must examine the record from the hearing on appellees' request for the appointment of a "special advisor" or "receiver" to determine whether there was sufficient evidence adduced at the hearing from which the trial court could infer that Capps and Frazer could not act independently of Dick or that Dick's alleged influence over Capps and Frazer amounted to oppression of the minority shareholders.

Capps and George Stacy were the only two current NFP board members who testified. Capps did not state he was "influenced" by Dick. Capps testified NFP hired an independent appraiser to recommend a fair market rent. The appraiser recommended $485,000 per year. Capps said he spoke to Dick about paying a higher rent amount, but the rent approved by the board in the Third Amendment was $480,000, with $200,000 paid immediately to assist NFP with cash flow problems. Capps said NFP is not insolvent, but has a negative cash flow. Capps acknowledged the Recreational Use Addendum gave Dick 100% control of the appellees' use of the property during the camping season, but he believed getting the recreational rights in writing (for the first time ever) was a step in the right direction.

George testified he had been a member of the NFP "family" board since shortly after 1981 "until we were fired by Dick in 2007"; a new three-person board was elected, two of whom were later "fired"; sometime in May 2009, he was asked to join the board again; and he has "been fired and hired several times since then." He did not explain why he believed Dick had "fired" any board or board member.

George also never testified he believed either Capps or Frazer was controlled or unduly influenced by Dick. Instead, he testified that (1) the Third Amendment was not on the agenda for the August 3 board meeting and he did not know about the amendment until the meeting; (2) he made his comments regarding the amendment available to the board for the August 28 meeting; (3) he wanted to delay any vote on August 28 because the next day the trial court was conducting another hearing, but Capps and Frazer voted in favor of the Third Amendment anyway; (4) he was angered when he saw that, after the vote, the Third Amendment was presented for signatures and it had already been signed by Dick; (5) he suggested a higher rent be paid by CMI to NFP and other options were discussed at the August 28 meeting, but Capps did

not think Dick would agree to those options; and (6) Capps and Frazer were not willing to consider what other family-run camps were doing. George said he was authorized to find another party to rent the property from NFP, but he was unable to do so because he did not have time. On the issue of recreational access, George testified that before Capps came onto the board, he had been denied access many times and NFP's proposal that Dick could not "unreasonably withhold" his permission for the minority shareholders to use the property during camp season was rejected by Dick and, instead, more restrictive conditions were imposed under the Recreational Use Addendum, including that during the camping season the minority shareholders' "access will be limited to the time and manner determined by Tenant [CMI] in its discretion."

Cynthia Allen, who was an NFP board member from approximately August 2007 through October 2009, was not asked about why her board, which consisted of herself, John Genung, and George, was dissolved. Instead, she testified only about the rent the board wanted to receive under the First Amendment to the 2008 lease. She said she, Genung, and George unanimously agreed to authorize Genung to negotiate a rent in the range of $40,000 to $60,000 per month. NFP and CMI eventually entered into the First Amendment which provided for a monthly rent of $38,750. According to the trial court, the Allen-Genung-Stacy board was "dissolved" because the board acted independently of Dick when the board "would not approve a lease that Dick wanted . . . ." However, even if the Allen-Genung-Stacy board had been able to negotiate the lease it wanted with a monthly rent of $40,000, yielding a yearly rental income of $480,000, we note that this is the same amount of rent the trial court determined was "significantly less than the rent NFP would probably receive in a true arm's-length transaction."

We conclude the evidence adduced at the hearing shows there is a significant difference of opinion among the NFP directors and the minority shareholders over the amount of rent CMI should pay to NFP. However, there is no indication in the record that this difference of opinion impeded NFP's ability to conduct its business or that Capps and Frazer could not act independently of Dick or that Dick's alleged influence over Capps and Frazer amounted to oppression of the minority shareholders. In its order, the trial court found that "since the rent dispute arose, Dick (acting as majority owner of NFP) has removed two sets of NFP board members after his negotiations with them (while he was acting as owner of Camp Mystic) were unsuccessful." Although George said he had been "fired" and other board members were "fired," there is no evidence in this record for the reasons behind any alleged firing. Therefore, we conclude there is not sufficient evidence in this record to justify the trial court's appointment of Mr. Jackson to act for NFP.

## RIGHT TO ARBITRATION

The Recreational Use Addendum to the Third Amendment contains the following clause:

> In the event of a dispute regarding Recreation Use, in no event shall any party, including Landlord, Tenant and any Landlord Party commence litigation. The parties, including Landlord, Tenant, and any Landlord Party (i) will negotiate in good faith to resolve the dispute and (ii) shall resolve any continued dispute by mediation followed by binding arbitration, with the goal of the mediation/arbitration to (a) act in the best interest of the camping operations and safety/security of the campers/counselors/employees; (b) follow best practices for the camp, and (c) reconcile the parties.

In its order, the trial court, "set aside[] and enjoin[ed] the mediation/arbitration provision in the Lease Amendment for the remainder of the first year." The trial court ordered that any dispute be brought to its attention and it would "schedule an immediate conference call." One of the explanations offered for doing so was that the trial court believed the clause was "not the result of an arm's-length negotiation by the NFP board majority." The trial court believed

"Camp Mystic has singled out the minority shareholders by imposing onerous rules that are imposed on no one else. . . . A truly disinterested NFP board acting in NFP's interests and not influenced by Dick's two removals of predecessor boards, would not have done this." We note that these are among the same reasons the trial court appointed Mr. Jackson and enjoined the Third Amendment.

As we stated above, there is not sufficient evidence in this record to support a finding that Capps and Frazer could not act independently of Dick or that Dick's alleged influence over Capps and Frazer amounted to oppression of the minority shareholders; therefore, the trial court's order denying the motion to compel must be reversed.[8] Because the trial court's decision to enjoin the arbitration clause is so closely intertwined with its reasons for granting the temporary injunction, we remand for further proceedings on this issue, rather than direct the trial court to compel arbitration.

## CONCLUSION

For the reasons stated above, we reverse the trial court's order granting a temporary injunction, appointing an "Agent" for NFP, and setting aside the arbitration agreement. We remand this case to the trial court for further proceedings.

Sandee Bryan Marion, Justice

---

[8] We also note that at the hearing, appellees' counsel stated that if the court was inclined to take up the merits of whether the minority shareholders, as nonsignatories, were bound by the agreement, they would want to address that issue "at a later time." On appeal, appellees concede the trial court did not base its ruling on any such finding. Whether an arbitration agreement is binding on a nonparty is a gateway matter to be determined by the trial court. *In re Weekley Homes, L.P.*, 180 S.W.3d 127, 130 (Tex. 2005). With no determination by the trial court here, the issue of whether appellees are bound by the agreement to arbitrate because they are non-signatories is not before this court.