

# Fourth Court of Appeals
## San Antonio, Texas

## OPINION

No. 04-23-00242-CV

**101 LEXINGTON TOWER, LLC** and Lex Avenue Hotel, LLC,
Appellants

v.

**830 N. ST. MARY'S HOTEL, LTD.** and Phoenix Hospitality Riverwalk, LLC,
Appellees

From the 37th Judicial District Court, Bexar County, Texas
Trial Court No. 2022CI09922
Honorable Mary Lou Alvarez, Judge Presiding

Opinion by:     Patricia O. Alvarez, Justice

Sitting:     Patricia O. Alvarez, Justice
Irene Rios, Justice
Liza A. Rodriguez, Justice

Delivered and Filed: August 2, 2023

AFFIRMED

This is an interlocutory appeal of the trial court's order granting a temporary injunction. Appellants argue the trial court abused its discretion in granting the temporary injunction because, inter alia, there was insufficient evidence to support each element.

Having reviewed the evidence under the appropriate standards, we cannot conclude that the trial court abused its discretion in granting the temporary injunction. We affirm the trial court's March 28, 2023 amended temporary injunction order.

BACKGROUND

The underlying case is a dispute between the companies that operate two adjacent hotels on the San Antonio Riverwalk: the Thompson and the Indigo. We recite the relevant alleged facts from the parties' pleadings.[1]

## A. Wood-Fired Grill's Exhaust

When the Thompson San Antonio Riverwalk Hotel opened in 2021, it included Landrace, a restaurant which cooks some of its signature dishes on a wood-fired grill. The grill's exhaust, which included smoke, grease, and smells, discharged approximately thirty feet away from the Hotel Indigo San Antonio Riverwalk.

The Indigo's guests and staff complained about the smells as well as the smoke and grease accumulating on the building, in the hallways, and inside guest rooms; it had permeated the sheetrock, flooring, soft goods, and cased goods. The Indigo notified the Thompson of these adverse effects.

The Thompson contracted with an engineering firm to redesign the grill's exhaust system, including a five-stage filter and a relocated exhaust point. In February and March of 2022, the exhaust system was modified. The modifications greatly reduced the amount of smoke emitted.

Despite the exhaust system modifications, the smells and grease were still being emitted, and the Indigo's customer and staff complaints continued.

## B. Indigo Sues Thompson

Plaintiffs 830 N. St. Mary's Hotel, Ltd. and Phoenix Hospitality Riverwalk, LLC (collectively the Indigo) sued 101 Lexington Tower, LLC and Lex Avenue Hotel, LLC (collectively the Thompson). The Indigo's causes of action against the Thompson include

---

[1] We express no opinion about the truth of the parties' pleaded facts in the underlying case.

negligence, nuisance, and trespass to real property. The Indigo also sought temporary injunctive relief: It asked the trial court "to shut down [the Thompson's] kitchen grills or whatever other operations are generating and causing the smoke and odors to blow from the Thompson's exterior vents onto and into the Indigo, and to keep them shut down pending a trial on the merits."

## C.      Temporary Injunction Hearing

On March 2nd and 3rd, 2023, the trial court held a hearing on the Indigo's application.

The Indigo's parent company's vice-president of business development, Ian McClure, described how the grill's exhaust was affecting the Indigo, its guests, and its staff.

The next day, as the hearing continued, the Thompson's management company's development manager testified. He described how the redesigned exhaust system included a five-stage filter, which was serviced monthly, and which eliminated the smoke "the majority of the time." He added that the exhaust point was moved horizontally about 100 feet, and it was raised vertically to about 30–40 feet above ground, near the level of the gutters on the Indigo's roof.

The Thompson's general manager testified that they had not had any complaints about the grill's exhaust from any of their guests, either those on the fourth-floor pool deck, or from the residences that were on the 12th to the 19th floors. The Thompson's general manager and executive chef also testified about the importance of the wood-fired grill to the hotel's concept and the Landrace's menu, customers, and suppliers.

## D.      Temporary Injunction Orders

At the conclusion of the hearing, the trial court orally granted the Indigo's amended application for a temporary injunction, and it ordered the Thompson to "not operate the wood burning fire grill until the time of trial."

On March 10th, the trial court signed an order granting the Indigo's application for a temporary injunction.

On March 13th, the Thompson filed its notice of appeal, which challenged the March 10th temporary injunction.

On March 21st, because it was void on its face, we stayed the trial court's March 10th temporary injunction order.

On March 28th, to correct the defects in the March 10th order, the trial court signed an amended temporary injunction order, which granted the Indigo's amended verified application for temporary injunction.

**TEMPORARY INJUNCTION ORDER TO REVIEW**

Before we decide whether the trial court abused its discretion in granting a temporary injunction, we must first determine which order we are reviewing.

**A.     March 10th Order**

The Thompson argues that the trial court's March 10th temporary injunction order was void for failing to comply with Rules 683 and 684.

We agree.

Rule 683 requires an order granting an injunction to set the cause for trial on the merits, and Rule 684 requires the order to set the amount of security. *See* TEX. R. CIV. P. 683, 684; *Qwest Commc'ns Corp. v. AT & T Corp.*, 24 S.W.3d 334, 337 (Tex. 2000).

The March 10th order did neither; it was void. *See Qwest Commc'ns*, 24 S.W.3d at 337; *Grounds v. First GroundRock Royalties, LLC*, 629 S.W.3d 674, 676 (Tex. App.—San Antonio 2021, no pet.).

**B.     March 28th Order**

After the Thompson filed its notice of appeal and we stayed the March 10th order, the trial court signed its March 28th amended temporary injunction order.

The Thompson argues that our March 21st order—which stayed the trial court's March 10th temporary injunction order—"prohibited the trial court from amending its [March 10th] order."

We disagree.

Unlike *Maldonado*, on which the Thompson relies, our March 21st order stayed the trial court's March 10th *order*, it did not stay all *proceedings*. *Cf. City of Corpus Christi v. Maldonado*, 398 S.W.3d 266, 269 n.3 (Tex. App.—Corpus Christi–Edinburg 2011, no pet.) (deciding that a trial court's order rendered after the court of appeals "stayed proceedings in the trial court" was void).

Further, Rule 29.5 anticipates that a trial court may make further orders "while an appeal from an interlocutory order is pending." TEX. R. APP. P. 29.5 ("While an appeal from an interlocutory order is pending, the trial court retains jurisdiction of the case and unless prohibited by statute may make further orders, including one dissolving the order complained of on appeal.").

The trial court's "further orders" may include replacing an earlier, defective temporary injunction order with an amended order that corrects the earlier order's defects. *Chin Tuo Chen v. Braxton*, No. 06-09-00088-CV, 2010 WL 99064, at *1 (Tex. App.—Texarkana Jan. 13, 2010, no pet.) (mem. op.) ("We conclude that the trial court had authority to enter the amended temporary injunction correcting the Rule 683 deficiencies."); *Tanguy v. Laux*, 259 S.W.3d 851, 855 (Tex. App.—Houston [1st Dist.] 2008, no pet.) ("We conclude that the trial court's actions in dissolving the August Order and replacing it with the December Order do not interfere with or impair our jurisdiction or the effectiveness of the relief sought in the appeal because Tanguy's appellate challenges concerning the substance of the injunction remain alive, despite the trial court's orders, because the two injunctions are substantively the same."); *Nexus Fuels, Inc. v. Hall*, No. 05-98-02147-CV, 1999 WL 993929, at *2 (Tex. App.—Dallas Nov. 1, 1999, no pet.) (not designated for

publication) ("The amended order does nothing more than bring the temporary injunction into compliance with rule 683 of the rules of civil procedure.").

Accordingly, we will review the trial court's March 28th amended temporary injunction order to determine whether the trial court abused its discretion in granting the order.

## STANDARD OF REVIEW

"Whether to grant or deny a temporary injunction is within the trial court's sound discretion." *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002); *see Abbott v. Anti-Defamation League Austin, Sw., & Texoma Regions*, 610 S.W.3d 911, 916 (Tex. 2020) (per curiam).

On appeal, "the court of appeals cannot overrule the trial court's decision unless the trial court acted unreasonably or in an arbitrary manner, without reference to guiding rules or principles." *Butnaru*, 84 S.W.3d at 211; *see Argo Group US, Inc. v. Levinson*, 468 S.W.3d 698, 700 (Tex. App.—San Antonio 2015, no pet.) (op. on reh'g). "The reviewing court must not substitute its judgment for the trial court's judgment unless the trial court's action was so arbitrary that it exceeded the bounds of reasonable discretion." *Butnaru*, 84 S.W.3d at 204; *accord Washington v. Associated Builders & Contractors of S. Tex. Inc.*, 621 S.W.3d 305, 311 (Tex. App.—San Antonio 2021, no pet.).

"We review the evidence in the light most favorable to the trial court's order and indulge all reasonable inferences in favor of the decision." *Argo Group*, 468 S.W.3d at 700; *accord Washington*, 621 S.W.3d at 311. "In resolving evidentiary matters, a trial court does not abuse its discretion 'if some evidence reasonably supports the court's ruling.'" *Anti-Defamation League*, 610 S.W.3d at 916 (quoting *Henry v. Cox*, 520 S.W.3d 28, 34 (Tex. 2017)); *accord Davis v. Huey*, 571 S.W.2d 859, 862 (Tex. 1978) ("An abuse of discretion does not exist where the trial court bases its decisions on conflicting evidence.").

## TEMPORARY INJUNCTION REQUIREMENTS

The purpose of a temporary injunction "is to preserve the status quo of the litigation's subject matter pending a trial on the merits." *Butnaru*, 84 S.W.3d at 204; *accord Camp Mystic, Inc. v. Eastland*, 399 S.W.3d 266, 272 (Tex. App.—San Antonio 2012, no pet.).

"The party applying for a temporary injunction 'must plead and prove three specific elements: (1) a cause of action against the defendant; (2) a probable right to the relief sought; and (3) a probable[,] imminent, and irreparable injury in the interim.'" *Anti-Defamation League*, 610 S.W.3d at 916 (quoting *Butnaru*, 84 S.W.3d at 204).

"An injury is irreparable if the injured party cannot be adequately compensated in damages or if the damages cannot be measured by any certain pecuniary standard." *Butnaru*, 84 S.W.3d at 204; *Washington*, 621 S.W.3d at 311.

"If an applicant pleads and proves each essential element to grant the temporary injunction for an independent cause of action, any trial court error pertaining to other independent causes of action is harmless because the pled and proven independent ground fully supports the temporary injunction." *Washington*, 621 S.W.3d at 311 (citing TEX. R. APP. P. 44.1(a)(1); *Talisman Energy USA, Inc. v. Matrix Petrol., LLC*, No. 04-15-00791-CV, 2016 WL 7379254, at *4 (Tex. App.—San Antonio Dec. 21, 2016, no pet.) (mem. op.)).

## INDIGO'S APPLICATION FOR TEMPORARY INJUNCTION

To be entitled to a temporary injunction, the Indigo had to plead and prove three elements: a cause of action, a probable right to the relief sought, and an irreparable injury. *See Butnaru*, 84 S.W.3d at 204; *Washington*, 621 S.W.3d at 310–11. We address each element in turn.

**A.      Cause of Action**

The first element the Indigo had to plead and prove was a cause of action against the Thompson.  *See Butnaru*, 84 S.W.3d at 204.  The Indigo pled three independent causes of action: negligence, creating a nuisance, and trespass to real property.  We first address nuisance.

*1.      Intentionally Creating a Nuisance*

"[T]he term 'nuisance' refers not to a defendant's conduct or to a legal claim or cause of action but to a type of legal injury involving interference with the use and enjoyment of real property."  *Crosstex N. Tex. Pipeline, L.P. v. Gardiner*, 505 S.W.3d 580, 588 (Tex. 2016); *accord Regency Field Servs., LLC v. Swift Energy Operating, LLC*, 622 S.W.3d 807, 815 n.15 (Tex. 2021).

"A [private] 'nuisance' is a condition that substantially interferes with the use and enjoyment of land by causing unreasonable discomfort or annoyance to persons of ordinary sensibilities attempting to use and enjoy it."  *Crosstex*, 505 S.W.3d at 593 (quoting *Holubec v. Brandenberger*, 111 S.W.3d 32, 37 (Tex. 2003)).

*Crosstex* recognized that a defendant could cause the legal injury of nuisance intentionally, negligently, or in another way, and it addressed what constituted intentionally causing nuisance: "[A] defendant intentionally causes a nuisance if the defendant . . . 'knows that [the interference] is resulting or is substantially certain to result' from the defendant's conduct."  *Id.* at 605 (third alteration in original) (quoting RESTATEMENT (SECOND) OF TORTS § 825).  To reiterate, "a defendant who acts . . . with knowledge that the interference is substantially certain to result is liable for intentionally causing the interference."  *Id.* at 606; *accord Aruba Petrol., Inc. v. Parr*, No. 05-14-01285-CV, 2017 WL 462340, at *2 (Tex. App.—Dallas Feb. 1, 2017, no pet.) (mem. op.).

*2.    Nuisance Evidence*

Ian McClure, the Indigo's representative, testified about the effects the Thompson's wood-fired grill's exhaust had, and is having, on the Indigo. The Indigo's rooms have individual air conditioning units which "suck in fresh air from the outside of the building and put it directly into the guest room." Nine of the guest rooms nearest the exhaust point were taken out of service because the exhaust had permeated the sheetrock, the flooring, the soft goods, and the cased goods, and the Indigo's deep cleaning techniques were no longer effective. The Indigo reported these effects to the Thompson.

The Thompson tried to reduce the grill's exhaust's effects on the Indigo by adding a multi-stage filter and relocating the exhaust point. The exhaust system modifications greatly reduced the amount of smoke emitted, but the smells and grease were still being emitted, and the complaints from the Indigo's customers and staff are continuing almost daily.

*3.    Interference Cause of Action Established*

Reviewing the evidence in the light most favorable to the trial court's order, and making all reasonable inferences in its favor, we conclude there was some evidence to reasonably support the trial court's (1) implied finding that the Thompson operated its wood-fired grill "with knowledge that the [exhaust's smoke, smells, and grease] is substantially certain to result [and] is liable for intentionally causing the interference," and (2) its express finding that the exhaust from the Thompson's wood-fired grill was causing unreasonable discomfort to the Indigo's customers and staff who were attempting to use and enjoy the property. *See Crosstex*, 505 S.W.3d at 606 (intentional nuisance); *Anti-Defamation League*, 610 S.W.3d at 916 (some evidence); *Argo Group*, 468 S.W.3d at 700 (favorable light, reasonable inferences).

Because there was some evidence to reasonably support the Indigo's claim that the Thompson's wood-fired grill exhaust was creating a private nuisance, we need not review the

Indigo's other causes of action. *See Washington*, 621 S.W.3d at 311 (citing TEX. R. APP. P. 44.1(a)(1); *Talisman Energy*, 2016 WL 7379254, at *3).

**B.      Probable Right to Recover**

The second element the Indigo had to plead and prove to obtain a temporary injunction was its probable right to the relief sought. *See Butnaru*, 84 S.W.3d at 204.

"[T]o show a probable right of recovery, the applicant must plead a cause of action and present some evidence that tends to sustain it." *Intercontinental Terminals Co., LLC v. Vopak N. Am., Inc.*, 354 S.W.3d 887, 897 (Tex. App.—Houston [1st Dist.] 2011, no pet.); *see Butnaru*, 84 S.W.3d at 211.

As we have just discussed, the Indigo's pleadings claimed that the Thompson's wood-fired grill exhaust was creating a nuisance. Although the Thompson presented evidence to rebut the Indigo's claim, the Indigo presented non-hearsay evidence, including testimony and photographs, that supported its claim. *See Frey v. CST Props., LLC*, No. 04-13-00450-CV, 2014 WL 783324, at *5 (Tex. App.—San Antonio Feb. 26, 2014, no pet.) (mem. op.) (citing *Butnaru*, 84 S.W.3d at 211) ("The trial court does not abuse its discretion . . . if [it] bases its decision on the probable right of recovery on conflicting evidence.").

Reviewing the evidence in the light most favorable to the trial court's order, and making all reasonable inferences in its favor, we conclude there was some evidence to reasonably support the trial court's finding that the Indigo demonstrated its probable right to the relief sought. *See Anti-Defamation League*, 610 S.W.3d at 916 (some evidence); *Butnaru*, 84 S.W.3d at 211 (probable right); *Argo Group*, 468 S.W.3d at 700 (favorable light, reasonable inferences).

**C.      Irreparable Injury**

The third element the Indigo had to plead and prove to obtain a temporary injunction was "a probable, imminent, and irreparable injury in the interim." *See Butnaru*, 84 S.W.3d at 204.

The Indigo pled that the smoke, smells, and grease were driving away its customers, adversely affecting its relationship with its branding company, IHG, and eroding its reputation and goodwill. Its representative testified that the costs for these injuries to its reputation and goodwill could not be readily quantified.

The Thompson argues that the Indigo failed to prove irreparable injury because, inter alia, (1) the costs of any injury can be readily calculated, (2) the Indigo did not present evidence that it was profitable or had a favorable reputation, and (3) it did not present objective facts, figures, or data from which the loss of goodwill could be calculated.

*1.     Applicable Law*

"An injury is irreparable . . . if the damages cannot be measured by any certain pecuniary standard." *Id.*; *accord Washington*, 621 S.W.3d at 311.

"Threatened injury to a business's reputation and good will with customers is frequently the basis for temporary injunctive relief." *Intercontinental Terminals*, 354 S.W.3d at 895; *accord Tex. Tel. Ass'n v. Pub. Util. Comm'n of Tex.*, 653 S.W.3d 227, 260–61 (Tex. App.—Austin 2022, no pet.) ("[M]onetary damages would not adequately compensate the [companies] for disruption of their business and service to customers or for losses of goodwill and customers, and those damages could not be measured by any certain pecuniary standard."); *Auburn Invs., Inc. v. Lyda Swinerton Builders, Inc.*, No. 04-08-00067-CV, 2008 WL 2923643, at *2 (Tex. App.—San Antonio July 30, 2008, no pet.) (mem. op.) ("Goodwill is generally understood to mean the advantages that accrue to a business on account of its name, location, reputation, and success.").

"[The temporary injunction order must] give the reasons why injury will be suffered if the interlocutory relief is not ordered." *Grounds*, 629 S.W.3d at 676 (quoting *State v. Cook United, Inc.*, 464 S.W.2d 105, 106 (Tex. 1971)); *accord Hoist Liftruck Mfg. v. Carruth-Doggett, Inc.*, 485

S.W.3d 120, 122–23 (Tex. App.—Houston [14th Dist.] 2016, pet. withdrawn) (citing *El Tacaso, Inc. v. Jireh Star, Inc.*, 356 S.W.3d 740, 748 (Tex. App.—Dallas 2011, no pet.)).

### 2. Evidence of Profitability, Reputation

The Thompson's general manager testified that the Thompson is a "lifestyle hotel," their room rates are "well over $300" per night, and the private residences in their building are some of the highest priced per square foot in the city. He noted that the Thompson and the Indigo were good neighbors; the Thompson had referred, and would continue to refer, their overflow customers to the Indigo.

The Indigo's representative testified that the Thompson is a luxury brand hotel, and the Indigo is an "upper upscale" hotel. He said his company has successfully operated the Indigo as an IHG-branded hotel for about six years, its adversely affected rooms were profitable, and the smoke and smells were harming its reputation.

From this and other testimony, the trial court could have reasonably inferred that the Indigo was a profitable hotel with a good reputation. *See Argo Group*, 468 S.W.3d at 700 (reasonable inferences).

### 3. Evidence of Damages

The Indigo's representative also testified they were able to calculate lost profits for the affected rooms, and specific costs for rehabilitating the affected rooms, hallways, and accoutrements. But he distinguished the injury to the Indigo's reputation and goodwill: The effects the Thompson's wood-fired grill's exhaust were having on the Indigo's reputation and goodwill could *not* be readily calculated. *See Butnaru*, 84 S.W.3d at 204 ("An injury is irreparable if . . . the damages cannot be measured by any certain pecuniary standard.").

He added that it was difficult to calculate damages to the Indigo's reputation and goodwill because the Indigo had no way of knowing, e.g., (1) whether a complaining guest would come

back to the hotel or choose to go elsewhere, or (2) how many prospective guests were choosing to stay in a different hotel because of the online reviews complaining of the exhaust's effects.

### 4. Injunction Order

As the factfinder, the trial court weighed the evidence and assessed its credibility. *See In re Marriage of Thrash*, 605 S.W.3d 224, 229 (Tex. App.—San Antonio 2020, pet. denied).

The trial court considered Ian McClure's testimony providing facts, figures, and data such as customers refusing to accept rooms because of the smoke and grease smells embedded in the rooms, refunds to customers that complained of those smells, and the lack of any certain pecuniary standard to measure the loss to the Indigo's reputation and goodwill. *See Auburn Invs.*, 2008 WL 2923643, at *2 (requiring "objective facts, figures, or data from which the loss of goodwill may be ascertained").

The trial court expressly found that the Indigo was suffering, and would continue to suffer, irreparable injury. *See Intercontinental Terminals*, 354 S.W.3d at 896 (recognizing that the trial court could credit testimony that calculating the financial loss of reputation and goodwill would be very difficult and affirming its finding that "the threatened injury [to the claimant] could not be adequately remedied at law"); *cf. Tex. Tel. Ass'n*, 653 S.W.3d at 260 (finding irreparable injury where the plaintiffs had shown they would suffer loss of customers and goodwill if the injunction did not issue).

The trial court's March 28, 2023 amended temporary injunction order, in compliance with Rule 683, identified the irreparable injury as "the result of the exhaust that is generated by the [Thompson's] wood-burning fire grill [which] blows towards [the] Indigo, where it has caused and likely will continue to cause customer complaints and damage to [the Indigo's] goodwill, business reputation, and customer base." *Cf. Grounds*, 629 S.W.3d at 676 (citing TEX. R. CIV. P. 683); *Hoist Liftruck Mfg.*, 485 S.W.3d at 122–23.

Reviewing the evidence in the light most favorable to the trial court's order, and making all reasonable inferences in its favor, we conclude there was some evidence to reasonably support the trial court's finding that the Indigo demonstrated probable, imminent, and irreparable injury if the injunction did not issue. *See Anti-Defamation League*, 610 S.W.3d at 916 (some evidence); *Butnaru*, 84 S.W.3d at 204 (irreparable injury); *Argo Group*, 468 S.W.3d at 700 (favorable light, reasonable inferences).

**D.      Temporary Injunction Elements**

As we have discussed, there was some evidence that reasonably supports the trial court's findings that the Indigo pled and proved (1) a cause of action; (2) a probable right to the relief sought; and (3) probable, imminent, and irreparable injury if the injunction did not issue. *See Anti-Defamation League*, 610 S.W.3d at 916 (some evidence); *Butnaru*, 84 S.W.3d at 204 (temporary injunction elements).

Accordingly, we cannot conclude that the trial court abused its discretion in granting the temporary injunction. *See Anti-Defamation League*, 610 S.W.3d at 916; *Butnaru*, 84 S.W.3d at 211.

### CONCLUSION

As the factfinder, the trial court was free to credit the Indigo's disputed evidence that the exhaust from the Thompson's wood-fired grill had caused, and was continuing to cause, smoke, smells, and grease that migrated to the Indigo and infused its rooms, hallways, and accoutrements.

Having reviewed the evidence in the light most favorable to the trial court's order, and having made all reasonable inferences in its favor, we cannot conclude that the trial court abused its discretion in granting the temporary injunction.

Therefore, we affirm the trial court's order.

Patricia O. Alvarez, Justice