

## Fourth Court of Appeals
### San Antonio, Texas

## MEMORANDUM OPINION

No. 04-23-00519-CV

**IN THE INTEREST OF E.J.C.**, M.J.J.C., V.P., A.N.B., and D.A.P., Children

From the 225th Judicial District Court, Bexar County, Texas
Trial Court No. 2022-PA-00753
Honorable Charles E. Montemayor, Judge Presiding

Opinion by:    Irene Rios, Justice

Sitting:       Irene Rios, Justice
               Liza A. Rodriguez, Justice
               Lori I. Valenzuela, Justice

Delivered and Filed: November 8, 2023

AFFIRMED IN PART; REVERSED AND RENDERED IN PART

Appellant Mother appeals the trial court's order terminating her parental rights to her children, E.J.C., M.J.J.C., V.P., A.N.B., and D.A.P. (collectively, "the children").[1]  Mother challenges the sufficiency of the evidence supporting the trial court's finding that termination of her parental rights is in the children's best interests.  We agree the evidence is insufficient to support a finding that termination of Mother's parental rights is in the children's best interests.

---

[1] To protect the identity of minor children in an appeal from an order terminating parental rights, we refer to the parents as "Mother," "Father E.P.," and "Father M.C.," and we refer to the children using their initials or as "the children." *See* TEX. FAM. CODE ANN. § 109.002(d); TEX. R. APP. P. 9.8(b)(2).  The trial court's order terminated Father E.P.'s parental rights to V.P., A.N.B., and D.A.P.; Father M.C.'s rights to E.J.C. and M.J.J.C.; and Mother's rights to all the children.  Although the trial court's order terminates the parental rights of Mother, Father E.P., and Father M.C. as to their respective children, only Mother appeals.

## BACKGROUND

The Department of Family and Protective Services ("the Department") initially became involved in April 2021 following allegations of neglectful supervision, domestic violence, and substance abuse.

On May 11, 2022, the Department filed a petition seeking emergency removal, temporary managing conservatorship of the children, and termination of the parents' parental rights. On April 26, 2023, the trial court held a bench trial. The trial court heard testimony from: Glory Bishop, the Department's caseworker from June 30, 2022 to January 30, 2023; Diana Salazar, the Department's caseworker since February 1, 2023; Father M.C.; Mother; and the children's maternal grandmother ("Grandmother").

On May 9, 2023, the trial court signed an order terminating Mother's parental rights to the children. Specifically, the trial court terminated Mother's parental rights based on statutory grounds (N) and (O) in subsection 161.001(b)(1) of the Texas Family Code. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(N), (O). The trial court also found that it was in the children's best interests to terminate Mother's parental rights. *See id.* § 161.001(b)(2). Mother appeals.

## STATUTORY REQUIREMENTS AND STANDARD OF REVIEW

To terminate parental rights pursuant to section 161.001 of the Texas Family Code, the Department has the burden to prove by clear and convincing evidence: (1) one of the predicate grounds in subsection 161.001(b)(1); and (2) that termination is in the best interest of the child. TEX. FAM. CODE ANN. § 161.001(b). Clear and convincing evidence requires "proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *Id.* § 101.007.

When reviewing the sufficiency of the evidence, we apply well-established standards of review. *See id.* §§ 101.007, 161.206(a); *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006)

(conducting a factual sufficiency review); *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005) (conducting a legal sufficiency review).

"In reviewing the legal sufficiency of the evidence to support the termination of parental rights, we must 'look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true.'" *In re J.L.B.*, No. 04-17-00364-CV, 2017 WL 4942855, at *2 (Tex. App.—San Antonio Nov. 1, 2017, pet. denied) (mem. op.) (quoting *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002)). "[A] reviewing court must assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so." *J.F.C.*, 96 S.W.3d at 266. "A corollary to this requirement is that a [reviewing] court should disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible." *Id.*

"In reviewing the factual sufficiency of the evidence to support the termination of parental rights, we 'must give due consideration to evidence that the factfinder could reasonably have found to be clear and convincing.'" *J.L.B.*, 2017 WL 4942855, at *2 (quoting *J.F.C.*, 96 S.W.3d at 266). "A [reviewing court] should consider whether disputed evidence is such that a reasonable factfinder could not have resolved that disputed evidence in favor of its finding." *J.F.C.*, 96 S.W.3d at 266. "The [reviewing] court must hold the evidence to be factually insufficient if, in light of the entire record, the disputed evidence contrary to the judgment is so significant that a reasonable factfinder could not have resolved that disputed evidence in favor of the ultimate finding." *In re M.T.C.*, No. 04-16-00548-CV, 2017 WL 603634, at *2 (Tex. App.—San Antonio Feb. 15, 2017, no pet.) (mem. op.).

Further, in a bench trial, the trial court is the sole judge of the credibility of witnesses and the weight to be given their testimony. *HealthTronics, Inc. v. Lisa Laser USA, Inc.*, 382 S.W.3d 567, 582 (Tex. App.—Austin 2012, no pet.). This is because "the trial judge is best able to observe

and assess the witnesses' demeanor and credibility, and to sense the 'forces, powers, and influences' that may not be apparent from merely reading the record on appeal." *Coburn v. Moreland*, 433 S.W.3d 809, 823 (Tex. App.—Austin 2014, no pet.) (quoting *In re A.L.E.*, 279 S.W.3d 424, 427 (Tex. App.—Houston [14th Dist.] 2009, no pet.)). We, therefore, defer to the trial court's judgment regarding credibility determinations. *Coburn*, 433 S.W.3d at 823–24.

## BEST INTERESTS

In her sole issue, Mother challenges the sufficiency of the evidence to support the trial court's finding that termination of her parental rights was in the children's best interests.

When considering the best interest of a child, we recognize the existence of a strong presumption that the child's best interest is served by preserving the parent-child relationship. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006). However, we also presume that prompt and permanent placement of the child in a safe environment is in the child's best interest. TEX. FAM. CODE ANN. § 263.307(a).

In determining whether a parent is willing and able to provide the child with a safe environment, we consider the factors set forth in section 263.307(b) of the Texas Family Code.[2]

---

[2] These factors include:

> (1) the child's age and physical and mental vulnerabilities; (2) the frequency and nature of out-of-home placements; (3) the magnitude, frequency, and circumstances of the harm to the child; (4) whether the child has been the victim of repeated harm after the initial report and intervention by the department; (5) whether the child is fearful of living in or returning to the child's home; (6) the results of psychiatric, psychological, or developmental evaluations of the child [or] the child's parents . . . ; (7) whether there is a history of abusive or assaultive conduct by the child's family or others who have access to the child's home; (8) whether there is a history of substance abuse by the child's family or others who have access to the child's home; (9) whether the perpetrator of the harm to the child is identified; (10) the willingness and ability of the child's family to seek out, accept, and complete counseling services and to cooperate with and facilitate an appropriate agency's close supervision; (11) the willingness and ability of the child's family to effect positive environmental and personal changes within a reasonable period of time; (12) whether the child's family demonstrates adequate parenting skills . . . ; and (13) whether an adequate social support system . . . is available to the child.

TEX. FAM. CODE ANN. § 263.307(b).

*See id.* § 263.307(b). We also consider the *Holley* factors.[3] *See Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). These factors are not exhaustive. *In re C.H.*, 89 S.W.3d 17, 27 (Tex. 2002). "The absence of evidence about some of these considerations would not preclude a factfinder from reasonably forming a strong conviction or belief that termination is in the child's best interest, particularly if the evidence were undisputed that the parental relationship endangered the safety of the child." *Id.* In analyzing these factors, we must focus on the best interest of the child, not the best interest of the parent. *Dupree v. Tex. Dep't of Protective & Regul. Servs.*, 907 S.W.2d 81, 86 (Tex. App.—Dallas 1995, no writ).

Evidence that proves one or more statutory ground for termination may also constitute evidence illustrating that termination is in the child's best interest. *C.H.*, 89 S.W.3d at 28 (holding the same evidence may be probative of both section 161.001(b)(1) grounds and best interest, but such evidence does not relieve the State of its burden to prove best interest). "A best-interest analysis may consider circumstantial evidence, subjective factors, and the totality of the evidence as well as the direct evidence." *See In re E.D.*, 419 S.W.3d 615, 620 (Tex. App.—San Antonio 2013, pet. denied). "A trier of fact may measure a parent's future conduct by his past conduct and determine whether termination of parental rights is in the child's best interest." *Id.*

Here, when the trial court made its oral ruling, it cited its recollection of prior hearings and information that was not presented through evidence at trial. In addition to citing testimony presented at trial, the Department's brief also points us to testimony in previous hearings that occurred while the case was pending, but before the trial commenced. However, the transcripts of

---

[3] These factors include: (1) the child's desires; (2) the child's present and future emotional and physical needs; (3) any present or future emotional and physical danger to the child; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist the individuals seeking custody to promote the child's best interest; (6) the plans for the child by the individuals or agency seeking custody; (7) the stability of the home or proposed placement; (8) the parent's acts or omissions which may indicate that the existing parent-child relationship is improper; and (9) any excuse for the parent's acts or omissions. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976); *see also In re E.C.R.*, 402 S.W.3d 239, 249 n.9 (Tex. 2013).

those hearing were not introduced as evidence at trial. "In order for testimony at a prior hearing or trial to be considered at a subsequent proceeding, the transcript of that testimony must be properly authenticated and entered into evidence." *In re J.B.*, No. 11-22-00305-CV, 2023 WL 3213089, at *4 (Tex. App.—Eastland May 3, 2023, no pet.) (alterations omitted) (holding, in a parental termination bench trial, the trial court erred to the extent it relied on testimony or assertions in prior hearings not admitted into evidence); *see also Camp Mystic, Inc. v. Eastland*, 399 S.W.3d 266, 278 (Tex. App.—San Antonio 2012, no pet.) ("[T]he trial court cannot take judicial notice of testimony from a previous proceeding at a subsequent proceeding unless the testimony is admitted into evidence at the subsequent proceeding."). Because there were no exhibits offered into evidence, the only evidence the trial court could have considered to support its best interest determinations was the testimony of the witnesses at trial. *See In re B.M.M.*, No. 04-21-00089-CV, 2021 WL 3377587, at *1 (Tex. App.—San Antonio Aug. 4, 2021, no pet.). Therefore, our review is limited to the testimony presented at trial and the application of that evidence to the *Holley* factors and the best-interest factors listed in subsection 263.307(b) of the Texas Family Code. It was error for the trial court to consider evidence not presented at trial.

## A. Holley Factors

### i. Desires of the Children

There was no evidence presented at trial regarding the children's desires. "When children are too young to express their desires, the fact finder may consider that the children have bonded with the foster family, are well-cared for by them, and have spent minimal time with a parent." *In re J.M.G.*, 608 S.W.3d 51, 57 (Tex. App.—San Antonio 2020, pet. denied). Here, the children range in age from three to nine years old. The children have been split into foster homes with the two oldest children placed with a foster family in Dallas, and the three youngest children placed with a foster family in Houston. Even if we were to consider the children too young to express

their desires, there was no evidence presented at trial regarding their bond with their respective foster families. In contrast, Glory Bishop, the Department's first caseworker, testified that "[a]ll five children are really attached to their mother" and confirmed they "are very bonded to [Mother]." Because there was no evidence presented on this factor—and the evidence regarding the children's bond with Mother weighs against termination—this factor does not support the trial court's best interest determinations.

*ii.     Emotional and Physical Needs of the Children Now and in the Future*

Bishop testified that one of the concerns leading to removal was that the parents were unable to provide stable housing. Bishop and Diana Salazar, the Department's second caseworker, opined that Mother is not able to meet the physical needs of the children because she has provided inadequate proof of stable housing and is unable to show stable income.

After the Department filed its petition but before trial, Mother and Father E.P. moved to Florida. Regarding housing, Mother testified she lives with her sister in Florida. Bishop and Salazar confirmed Mother was living with her sister in Florida. However, Bishop and Salazar testified that Mother's housing cannot be considered stable because neither Mother nor the children are listed as occupants on her sister's lease.

Bishop testified that Mother has been living with her sister for the ten months preceding trial without issue, "[b]ut that—for the Department's sake[—]is not stable housing." Bishop elaborated that Mother can be asked to leave at any time because she is not on the lease. This contention is less than compelling. First, there was no evidence on whether Mother's sister owns her house or is leasing the house. Second, the Department's determination—that a parent does not maintain stable housing when they live with a family member because they may be kicked out at some future date—hinges on speculation. Third, under the Department's logic, any parent who lives with a family member—regardless of whether that family member owns or rents their

house—would be unable to show that the parent has obtained stable housing because the parent is subject to the family member's permission to reside in the family member's home. Further, as explained more fully below, Mother's decision to separate from Father E.P. and avail herself of her social support system by living with her sister are actions that support a determination that Mother is acting in the children's best interests.

Salazar testified Mother lives with her sister in a three-bedroom home. Salazar stated this is not a "feasible" living situation for the children because Mother's sister has two children of her own and there is not enough room at sister's home to house all five children. Just because the size of the home may be a less-than-ideal living situation for the five children does not mean the home is unstable or inadequate. *See In re A.H.*, 414 S.W.3d 802, 807 (Tex. App.—San Antonio 2013, no pet.) ("[T]he best interest standard does not permit termination merely because a child might be better off living elsewhere."). To the contrary, it is undisputed that Mother has lived with her sister without issue for the ten months preceding trial. Mother testified she has never been asked to leave her sister's home and her sister would not ask Mother to leave the home. Mother testified there is enough room for her five children at her sister's home, and her sister has agreed to let the children live with Mother in the sister's home should the children be returned to Mother. We believe Bishop's and Salazar's conclusions that Mother does not have stable housing is not supported by the record.

Regarding income, Bishop testified Mother provided her with a paystub in October 2022, but has not subsequently shown proof of income. Salazar testified that Mother claims to have income but has not provided Salazar with proof of her income. Mother testified she earns $1,500 a month cleaning houses. According to Mother, she cannot provide paystubs because her clients pay her in cash. Mother further testified she offered to give the Department letters from her clients to show her income, but the Department told Mother the letters were insufficient to prove stable

income. Mother stated her sister, with whom she lives, also works two jobs. Finally, Grandmother—who lives next door to Mother and her sister—testified she has a full-time job and provides Mother with additional financial support. While the caseworkers may have some concerns regarding Mother's income, it is undisputed that Mother is receiving financial support from her familial support system.

Mother's living situation and earning capacity are certainly relevant to a best-interest determination; however, evidence that a parent is "economically disadvantaged" "does not constitute clear and convincing evidence sufficient for a court . . . to order termination of the parent-child relationship." *See* TEX. FAM. CODE ANN. § 161.001(c)(2). "Termination of parental rights should not be used as a mechanism to merely [relocate] a child to better and more prosperous parents." *In re D.L.W.W.*, 617 S.W.3d 64, 81 (Tex. App.—Houston [1st Dist.] 2020, no pet.).

When asked whether Mother can meet the emotional needs of the children, Salazar responded "I don't think I'm prepared to answer that question." Bishop, who was not the caseworker during the three months preceding the trial, testified she did not believe Mother "would be able to be emotionally stable to care for her children at this point." This testimony, however, is conclusory. "[C]onclusory testimony, such as the caseworker's, even if uncontradicted does not amount to more than a scintilla of evidence." *See A.H.*, 414 S.W.3d at 807. Bishop did not testify to any articulable reasons or facts that support her belief and did not further elaborate on why she thought Mother is not emotionally stable to care for the children. Following Mother's objection, the trial court stated it would limit its consideration of Bishop's "testimony and perceptions and opinions as to the time period she was involved" in the case and would "note Mother's objection as to the weight [of the evidence], but not as to admissibility." Bishop ceased being the caseworker on January 30, 2023, and the trial court limited consideration of her testimony to that time period. Thus, Bishop's testimony bore little weight on the trial court's assessment of Mother's emotional

stability at the time of trial. In addition, the conclusory nature of Bishop's testimony does not amount to more than a scintilla of evidence. *See id.* This factor does not weigh in favor of termination.

### iii. *Emotional and Physical Dangers to the Children Now and in the Future*

Bishop testified the children were removed because there was domestic violence in the home, suspected drug use, and neglectful supervision. Mother successfully completed a domestic violence class, an outpatient drug treatment program, and parenting classes to address these concerns.

Bishop testified the domestic violence occurred between Mother and Father E.P., and Father E.P. was the aggressor. Bishop agreed that if Mother separated from Father E.P., the Department would no longer be concerned with Mother when it comes to domestic violence. While Bishop testified Father E.P. stated on March 2, 2023, that he and Mother were trying to work on their relationship, Salazar testified Father E.P. told her that he and Mother separated on February 28, 2023. Neither Bishop nor Salazar could confirm whether Mother and Father E.P. were separated at the time of trial.

Mother, however, testified she separated from Father E.P. and does not intend to rekindle the relationship. She stated Father E.P. does not know where she lives and has tried to indirectly contact her through one of his family members, but she subsequently blocked the number. Mother also testified she now knows how to identify "red flags" in her relationships.

While Mother only took two out of six drug tests, Bishop testified Mother's results were clean, and drug use by Mother was not a concern for the Department. This factor does not weigh in favor of termination.

*iv.*   *Parental Abilities*

Aside from the concerns regarding Mother's financial and housing stability, the Department did not present any evidence negating Mother's ability to parent her children.[4]  As mentioned above, Mother successfully completed her parenting classes.  Although Mother lives in Florida, Mother testified that she attended all scheduled virtual visits with her children.  Salazar confirmed the visits were appropriate, the Department has no concerns with Mother's interactions with the children, and that the children are very bonded to Mother.  Bishop testified she would have to redirect Mother at visits, nonetheless, because Mother would make "broken promises to the children or she would ask questions over and over again about their health until she got the answer that she wants."  Bishop, however, did not explain what broken promises were made or what medical questions were asked.  The Department failed to develop this testimony and no further evidence was presented on Mother's actions during the visits.

Salazar stated she initiated monthly contact with Mother, but Mother "would reach out in between [their] monthly meetings."  According to Salazar, Mother would call Salazar to ask how the children were doing and seek updates regarding the children's health following medical and dental appointments.  Salazar also provided Mother with updates on the children's therapy and with updates on one child's help with dyslexia and another child's speech therapy.  There was minimal and conclusory evidence regarding Mother's inability to parent.  The trial evidence applicable to this factor weighs against termination.

*v.*   *Programs Available to Assist the Parent*

Bishop testified Mother's service plan required her to participate in and complete parenting classes, domestic violence classes, drug treatment, and individual and family therapy.  Mother was

---

[4] Salazar testified that Mother's parental rights should be terminated because "she has . . . no proof of income, and the housing is inappropriate."

also required to pass random drug tests and take a psychiatric evaluation and follow any recommendations from the psychiatric evaluation.

Mother successfully completed her parenting classes, domestic violence classes, and outpatient drug treatment. Bishop testified Mother took two out of six random drug tests that were requested while she was the caseworker and both tests were negative for illegal drugs. Salazar did not present any testimony regarding Mother and drug abuse. Bishop testified that the Department did not have a concern that Mother was using drugs at the time of trial.

Mother also completed her psychiatric evaluation and, according to Bishop, it was recommended that Mother address her mental health issues. While Bishop and Salazar both testified that Mother failed to address her mental health issues, neither caseworker identified any underlying mental health concerns. There was no evidence on what mental health condition Mother may have or whether she has been diagnosed with a mental health condition. There was no testimony on whether Mother was supposed to seek treatment from a physician or psychiatrist or whether Mother was prescribed medication. Bishop and Salazar's statements that Mother did not address her mental health issues are conclusory, as they never elaborated on any prescribed treatment for Mother or on any non-compliance on her part. This conclusory evidence amounts to no evidence at all. *See D.L.W.W.*, 617 S.W.3d at 84 ("Conclusory opinion testimony, even if uncontradicted, does not amount to more than a scintilla of evidence; it is no evidence at all." (citing *A.H.*, 414 S.W.3d at 807)).

Bishop and Salazar both testified that Mother did not complete her therapy. Mother concedes she did not complete her therapy but testified that she was currently engaged with a therapist in Florida at the time of trial. Mother could not provide the last name of the therapist and could only describe generally where the therapist was located. We recognize it is the trial court's province to assess the credibility of the witnesses and the trial court was entitled to disbelieve

- 12 -

Mother's self-serving testimony. We also realize Mother's failure to complete therapy may be probative of a best-interest determination in some cases. Here, however, the Department did not present any evidence as to why Mother needed therapy or that her failure to complete therapy would have any impact on the children's best interests.[5] *See In re D.B.T.*, No. 04-14-00919-CV, 2015 WL 1939072, at *4 (Tex. App.—San Antonio Apr. 29, 2015, no pet.) (holding a parent's failure to complete a service is not probative of the child's best interest when the Department fails to identify the need for the service). While it is possible that Mother may benefit from therapy, the Department failed to present testimony on how Mother's therapy would be probative of the children's best interests. *See C.H.*, 89 S.W.3d at 28 (holding the same evidence may be probative of both section 161.001(b)(1) grounds and best interest, but such evidence does not relieve the Department of its burden to prove best interest).

This factor weighs against termination.

---

[5] The only evidence indicating Mother's therapy may be probative of the trial court's best interest determinations is the following testimony from Bishop:

Q:    Okay and the children, as you stated, are very bonded to mother, Correct?

A:    They are.

Q:    And the visits—and you got this from seeing their—their reaction with her and—during the visits between the children and mom. Correct?

A:    Yes. And communicating with the children.

Q;    Okay. And so the bond is strong and there is no problem with that relationship between mother and the children, would you agree?

A:    There is issues. The children do have reactions after their parent/child visits, which family therapy would have helped with the issues that the children have with their mom.

Q:    And the issues are that they want to be with mom?

A:    No, there are other issues, as well.

Bishop never elaborated on what the alleged "issues" were or what reactions the children had following visitation with Mother. Moreover, Bishop never explained how or why family therapy would resolve these unknown issues. Like much of the caseworkers' testimony throughout the trial, the general assertion that family therapy would help the children's relationships with Mother—without further explanation—is conclusory. *See City of San Antonio v. Pollock*, 284 S.W.3d 809, 818 (Tex. 2009) ("[I]f no basis for the opinion is offered, or the basis offered provides no support, the opinion is merely a conclusory statement and cannot be considered probative evidence . . . ."); *In re M.A.J.*, 612 S.W.3d 398, 412 (Tex. App.—Houston [1st Dist.] 2020, pet. denied) (stating conclusory opinion testimony is no evidence at all and therefore has no probative value).

vi.   *Plans for the Child*

Salazar testified the children are currently split between two foster families. The Department plans to relocate the two oldest children with their paternal aunt in Florida and to leave the three youngest children with their foster family in Houston. Salazar stated paternal aunt and the foster family in Houston are willing to adopt the respective children, but the testimony did not indicate there is a planned adoption. *Contra In re A.M.M.*, No. 04-19-00806-CV, 2020 WL 2139308, at *4 (Tex. App.—San Antonio May 6, 2020, pet. denied) (holding evidence that the children are placed in a stable and nurturing environment with a planned adoption supported the trial court's best-interest determinations). Furthermore, the record is silent regarding the bond between the children and their foster families or whether the children are thriving in their current placements. *Contra id.* Should Mother be able to regain custody of the children, they will all be reunified with Mother. This factor weighs neither against nor for termination.

vii.   *Stability of the Home*

As mentioned above, there was testimony that Mother is not listed on a lease at her sister's home; however, this does not equate to Mother's home being unstable. This factor weighs against termination.

viii.   *Acts or Omissions of the Parent Which May Indicate the Existing Parent-Child Relationship is not a Proper One and Any Excuses for the Acts or Omissions*

As mentioned above, Mother completed most of her services, addressed the Department's concerns, attended all visitation with the children, and regularly contacted the caseworker to check on the children. On the other hand, Mother did not complete therapy. Mother claimed she did not engage in therapy sooner because she wanted to engage with a therapist in Florida. Mother testified she completed therapy before removal, and she had started therapy again in Florida. As

previously discussed, the Department failed to show what bearing the missed therapy sessions may have on the children's best interests.

Bishop and Salazar also testified that Mother has not addressed her mental health issues. However, we have already determined the testimony regarding Mother's mental health is conclusory because neither caseworker elaborated on Mother's condition or how she failed to address her mental health condition. When asked about her mental health, Mother testified she completed the psychiatric evaluation, completed therapy before removal, and is currently enrolled in therapy. Mother also stated she does not know what needs to be done to address the Department's alleged mental health concerns. Mother stated the Department has not required her to see a psychiatrist, other than for the psychiatric evaluation, and she has never been asked to take nor has she been prescribed psychotropic medications. The Department did not rebut Mother's testimony. There was no testimony beyond the general statement: Mother did not address her mental health issues. This conclusory testimony is insufficient to support a finding that termination of Mother's parental rights is in the children's best interests.

Bishop testified that Mother's move to Florida was an act that hindered Mother's ability to visit the children and hindered the children's bond with Mother. However, it is undisputed that Mother attended every visit virtually, and both caseworkers testified the children are very attached and bonded with Mother. As explained more fully below, Mother's social support system is in Florida. We cannot say Mother's decision to move close to her social support system is an act indicating the parent-child relationship is improper. These factors weigh against termination.

B.  TEX. FAM. CODE ANN. § 263.307(b) Factors

   i.   *Child's Age and Physical and Mental Vulnerabilities*

As mentioned above, the children range in age from three to nine years old.  There was some evidence that one child was receiving services for dyslexia and another child received speech therapy.  However, none of this evidence weighs in favor of termination.

   ii.  *Frequency and nature of out-of-home placements*

There was no evidence presented on this factor other than the foster placements at the time of trial.

   iii. *Magnitude, Frequency, and Circumstances of Harm to the Child*

Bishop testified in general that the children were removed because they were exposed to domestic violence, and there were concerns of drug use, neglectful supervision, and instability in the home.  However, there was no testimony regarding the alleged underlying domestic violence, drug use, or neglectful supervision.  As mentioned above, the Department failed to present clear and convincing evidence that Mother's home is unstable.

   iv.  *Whether the Child Has Been the Victim of Repeated Harm after the Initial Report and Intervention by the Department*

There was no evidence presented on this factor.

   v.   *Whether the Child is Fearful of Living In or Returning to the Child's Home*

Salazar testified the children are very attached and very bonded with Mother, indicating they are not fearful of returning to Mother's home.

   vi.  *The Results of Psychiatric, Psychological, or Developmental Evaluations of the Child, the Child's Parents, Other Family Members, or Others Who Have Access to the Child's Home*

As mentioned above, the caseworkers testified Mother did not show proof of therapy and failed to address her mental health.  However, there was no testimony regarding the results of Mother's psychiatric evaluation nor was there testimony extrapolating what actions Mother could

take to address concerns from her psychiatric evaluation. Further, there was no testimony regarding steps Mother failed to take to address her mental health other than an indication that she needed to attend therapy. However, based on this record, the fact finder could not have determined the severity of Mother's mental health condition or whether therapy was necessary to address the Department's alleged concerns with Mother's mental health.

vii. *History of Abusive or Assaultive Conduct*

As mentioned above, Father E.P. was the aggressor of the domestic violence, and there was no testimony disputing Mother and Father E.P. had separated. Mother testified she learned from domestic violence classes how to recognize the red flags of domestic violence. In addition, there was undisputed testimony that Mother declined Father E.P.'s attempts to contact her.

viii. *History of Substance Abuse*

Bishop testified drug abuse was not a concern for Mother.

ix. *Whether the Perpetrator of the Harm to the Child is Identified*

Other than the testimony stating Father E.P. was the aggressor of the domestic violence between Mother and Father E.P., there was no evidence presented on this factor.

x. *Willingness and Ability of the Parent to Seek Out, Accept, and Complete Counseling Services and to Cooperate with and Facilitate an Appropriate Agency's Close Supervision*

As mentioned above, Mother did not complete therapy. However, the testimony shows that—other than the therapy sessions—Mother cooperated with the Department, completed her other services, regularly checked on the children, and attended visitation with the children.

xi. *Willingness and Ability of the Child's Family to Effect Positive Environmental and Personal Changes Within a Reasonable Period of Time*

The Department filed its petition in May 2022 and the trial occurred less than a year later on April 26, 2023. The record reflects Mother cured the Department's drug concerns, obtained stable housing, and completed her parenting classes and domestic violence classes. Mother

testified that she learned from the domestic violence classes and can identify red flags in her relationships. The evidence at trial indicates that Mother was willing and able to effect positive environmental and personal change within a year after removal.

*xii.    Whether the Child's Family Demonstrates Adequate Parenting Skills*

As mentioned above, the Department's only concern at trial was Mother's income and living situation. We have already determined that the Department's concern with Mother not being listed on a lease does not necessarily equate to unstable housing. The undisputed evidence also reflects Mother is earning income and is further supported by her sister and Grandmother.

*xiii.    Adequate Social Support System*

Mother testified she lives with her sister in Florida and Grandmother lives next door. Mother stated her brothers live twenty minutes away. Grandmother and Mother's siblings are employed, and Mother testified they are an adequate social support system that Mother can rely on. Grandmother testified she provides mental and financial support for Mother. When asked whether Mother is able to protect the children and meet their emotional and physical needs, Grandmother responded: "She'll do it and we're going to help her do it." Although Mother moved away from the children, viewing the evidence as a whole, Mother surrounded herself with a social support system in Florida that allowed her to effect positive change and was an act in the children's best interests. This factor weighs against termination.

"[T]ermination is not warranted 'without the most solid and substantial reasons.'" *D.L.W.W.*, 617 S.W.3d at 81 (quoting *Wiley v. Spratlan*, 543 S.W.2d 349, 352 (Tex. 1976)). In parental-termination proceedings, the Department's burden is not simply to prove that a parent should not have custody of her children; the Department must meet the heightened burden to prove, by clear and convincing evidence, that it is not in the children's best interests for them to have any

legal relationship with the parent whatsoever. *See In re K.N.J.*, 583 S.W.3d 813, 827 (Tex. App.—San Antonio 2019, no pet.).

As factfinder, the trial court was required to base its decision only on the evidence presented at trial and was not permitted to rely on evidence presented in past hearings that was not admitted at trial. *See J.B.*, 2023 WL 3213089, at *4. While there was some evidence presented at trial indicating termination of Mother's parental rights may be in the children's best interests, it is the Department's burden to prove that termination is in the children's best interests by clear and convincing evidence. *See A.H.*, 414 S.W.3d at 807 ("[D]ue process and the Texas Family Code place the burden of proof on the Department to prove the necessary elements by the heightened burden of 'clear and convincing evidence.'"). The Department has failed to meet its burden.

Having reviewed the record and considered all the evidence in the appropriate light, we conclude the trial court could not have formed a firm belief or conviction that termination of Mother's parental rights was in the children's best interests. *See* TEX. FAM. CODE ANN. § 161.001(b)(2); *J.F.C.*, 96 S.W.3d at 226; *J.L.B.*, 2017 WL 4942855, at *2. Accordingly, the trial court erred when it based its decision on legally insufficient evidence. Mother's sole issue is sustained.

### CONSERVATORSHIP

In her prayer, Mother asks that we render judgment naming Mother managing conservator of the children. Mother did not present, nor brief, an issue regarding conservatorship. Because Mother's challenge to conservatorship was not subsumed in her termination appeal, we must affirm the trial court's appointment of the Department as the managing conservator of the children. *See In re B.R.*, 456 S.W.3d 612, 618 (Tex. App.—San Antonio 2015, no pet.) (declining to modify conservatorship finding when reversing termination of parental rights); *see also In re J.A.J.*, 243 S.W.3d 611, 617 (Tex. 2007) (explaining procedure to be followed by a parent, the

Department, and the trial court when a judgment terminating parental rights is reversed by the court of appeals but the Department's conservatorship is affirmed). "When the Department has been named a child's managing conservator, the court 'shall hold a hearing to review the conservatorship appointment' at least once every six months until the child becomes an adult." *J.A.J.*, 243 S.W.3d at 617 (citing TEX. FAM. CODE ANN. §§ 263.002, 263.501(a)). "These hearings . . . guarantee that courts will continuously review the propriety of the Department's conservatorship, until a point when the [children's parent] appears capable of providing for the [children's] best interests." *J.A.J.*, 243 S.W.3d at 617. We are confident the trial court will act in the children's best interests when it reviews the conservatorship appointment.

## CONCLUSION

We reverse the portion of the trial court's Order of Termination that terminated Mother's parental rights to the children and render judgment denying the Department's petition for termination of Mother's parental rights to the children. We affirm the Order of Termination in all other respects.

Irene Rios, Justice