

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-23-00780-CV

Lynh Thy **PHAM**; Smiley Dental, PLLC; Smiley Dental Management Company, LLC; SD-933Schertz, P.C.; SD-Braun, P.C.; SD-Dezavala, P.C.; SDBraun, P.C.; SD-Hwy 78, P.C.; SD-Potranco, P.C.; and SD-Roosevelt, P.C.,
Appellants

v.

**M&M ORTHODONTICS, PA** and U Too Dental, PLLC,
Appellees

From the 166th Judicial District Court, Bexar County, Texas
Trial Court No. 2022CI00435
Honorable Rosie Alvarado, Judge Presiding

Opinion by:     Luz Elena D. Chapa, Justice

Sitting:      Rebeca C. Martinez, Chief Justice
              Patricia O. Alvarez, Justice
              Luz Elena D. Chapa, Justice

Delivered and Filed: June 26, 2024

AFFIRMED

Appellants Lynh Thy Pham; Smiley Dental, PLLC; Smiley Dental Management Company,

LLC; SD-933Schertz, P.C.; SD-Braun, P.C.; SD-Dezavala, P.C.; SDBraun, P.C.; SD-Hwy 78,

P.C.; SD-Potranco, P.C.; and SD-Roosevelt, P.C. ("Appellants") appeal the trial court's August 2,

2023 order granting a temporary injunction against them.[1] Appellants contend the trial court abused its discretion in granting the temporary injunction because (1) the injunction did not comply with Rule 683 of the Texas Rules of Civil Procedure, (2) appellees M&M orthodontics, PA and U Too Dental, PLLC did not make the required showings necessary to warrant injunctive relief, and (2) the mandatory portion of the injunction is void.[2] We affirm.

## BACKGROUND

In 2016, M&M sold six orthodontic practices operating in and around Bexar County to KP-SA Management, LLC—whose principal was Thang "Kido" Pham—for $3.5 million via an asset purchase agreement. The asset purchase agreement was accompanied by a security agreement, securing M&M from losses with all the collateral sold under the asset purchase agreement.[3] In order to manage the orthodontic practices, Pham enlisted his then-wife and dentist—Dr. Lynh Pham.[4] In connection with the asset purchase agreement, the Phams established a series of professional corporations to manage the orthodontics practices including SD-933Schertz, P.C.; SD-Braun, P.C.; SD-Dezavala, P.C.; SDBraun, P.C.; SD-Hwy 78, P.C.; SD-Potranco, P.C.; and SD-Roosevelt, P.C. Kido Pham and Dr. Lynh Pham also owned certain management companies responsible for overseeing the professional corporations: Smiley Dental, PLLC and Smiley Dental Management Company, LLC.

---

[1] Where necessary to distinguish between the parties, we will refer to (1) appellants Smiley Dental, PLLC and Smiley Dental Management Company as "Smiley" and (2) appellants SD-933Schertz, P.C.; SD-Braun, P.C.; SD-Dezavala, P.C.; SDBraun, P.C.; SD-Hwy 78, P.C.; SD-Potranco, P.C.; and SD-Roosevelt, P.C. as the "Practices."

[2] Appellees will be referred to collectively as "M&M."

[3] This included, among other things: (1) all ownership and operational interest of KP-SA, (2) all of Kido Pham's share of profits, distributions, income and surplus from KP-SA, and (3) all of Kido Pham and KP-SA's right, title, and interest in and to all of their personal property, fixtures, leasehold improvements, equipment, general intangibles, cash, products, accounts receivable, and business assets.

[4] Kido Pham was not a dentist.

In 2017, Kido Pham and KP-SA ceased making payments in connection with the asset purchase agreement. In 2018, the parties modified their agreement to permit KP-SA to make interest only payments for one year and pay penalties for the missed payments to that point. However, after years with no resolution and with M&M continuing not to receive payments, M&M sued Kido Pham, KP-SA, and Appellants.[5] Specifically, M&M sued Appellants for conversion, tortious interference with existing contract, and civil conspiracy, and sought an injunction against all defendants.

After hearings on June 2 and 6, 2023, the trial court granted an injunction against Kido Pham, KP-SA, and Appellants. This appeal followed.

### TEMPORARY INJUNCTION ORDER

Appellants contend the trial court abused its discretion issuing the temporary injunction order because (1) the order did not comply with Rule 683 of the Texas Rules of Civil Procedure, and (2) M&M failed to demonstrate it was entitled to a temporary injunction because it did not make the required showing warranting injunctive relief.

### A. Standard of Review

We review the trial court's temporary injunction for an abuse of discretion. *Tex. Educ. Agency v. Hous. Indep. Sch. Dist.*, 660 S.W.3d 108, 116 (Tex. 2023). Under this standard, a "court of appeals cannot overrule the trial court's decision unless the trial court acted unreasonably or in an arbitrary manner, without reference to guiding rules or principles." *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 211 (Tex. 2002). "We review the evidence in the light most favorable to the trial court's ruling, draw all legitimate inferences from the evidence, and defer to the trial court's

---

[5] The initial petition did not include, as defendants, Dr. Lynh Pham or any of the Practices. Dr. Lynh Pham and the Practices were joined as defendants as a part of the second amended petition.

resolution of conflicting evidence." *Six Bros. Concrete Pumping, LLC v. Tomczak*, No. 01-21-00161-CV, 2022 WL 17981577, at *3 (Tex. App.—Houston [1st Dist.] Dec. 29, 2022, pet. denied) (mem. op.). "The trial court does not abuse its discretion if some evidence reasonably supports the trial court's decision." *Butnaru*, 84 S.W.3d at 211. The reviewing court must not "substitute its judgment for the trial court's reasonable judgment even if it would have reached a contrary conclusion." *Id.* "A trial court has no discretion to misapply the law, however, and thus we review its legal determinations de novo, based on current law." *Tex. Educ. Agency*, 660 S.W.3d at 116. "We limit the scope of our review to the validity of the order, without reviewing or deciding the underlying merits." *Henry v. Cox*, 520 S.W.3d 28, 33–34 (Tex. 2017).

**B. Law**

"A temporary injunction is an extraordinary remedy and does not issue as a matter of right." *Butnaru*, 84 S.W.3d at 204. "To obtain a temporary injunction, the applicant must show: (1) a cause of action against the party to be enjoined; (2) a probable right to recover on that claim after a trial on the merits; and (3) a probable, imminent, and irreparable injury absent the temporary injunction." *Harley Channelview Props., LLC v. Harley Marine Gulf, LLC*, No. 23-0078, 2024 WL 2096556, at *2 (Tex. May 10, 2024). *See generally Butnaru*, 84 S.W.3d at 204. "If any one of these required showings is lacking, the injunction should be denied (or reversed on appeal)." *Abbott v. Harris Cnty.*, 672 S.W.3d 1, 8 (Tex. 2023).

"[I]n order to determine whether they established a probable right to relief," we do not need to "resolve the ultimate merits of the plaintiffs' claims," and an applicant need only present evidence tending to sustain a claim that "will probably succeed on the merits." *Abbott v. Anti-Defamation League Austin, Sw., & Texoma Regions*, 610 S.W.3d 911, 917 (Tex. 2020); *Intercontinental Terminals Co., LLC v. Vopak N. Am., Inc.*, 354 S.W.3d 887, 897 (Tex. App.—

Houston [1st Dist.] 2011, no pet.) ("[T]o show a probable right of recovery, the applicant must plead a cause of action and present some evidence that tends to sustain it."). In other words, "[t]o establish a probable right to recover, a movant must have a cause of action for which it may be granted relief." *Camp Mystic, Inc. v. Eastland*, 399 S.W.3d 266, 273 (Tex. App.—San Antonio 2012, no pet.).

A probable or imminent injury is not established by showing "fear or apprehension of the possibility of injury"; instead, an applicant must "prove the defendant has attempted or intends to harm the plaintiff in the future." *Id.* at 276. "An injury is irreparable if the injured party cannot be adequately compensated in damages or if the damages cannot be measured by any certain pecuniary standard." *Harley Channelview Props.*, 2024 WL 2096556, at *2 (quoting *Butnaru*, 84 S.W.3d at 204) (internal quotation marks omitted). In other words, an applicant for a temporary injunction must establish there is no adequate remedy at law for damages. *See id.* "'An adequate remedy at law is one that is as complete, practical, and efficient to the prompt administration of justice as is equitable relief.'" *Fuentes v. Union de Pasteurizadores de Juarez Sociedad Anonima de Cap. Variable*, 527 S.W.3d 492, 500 (Tex. App.—El Paso 2017, no pet.) (quoting *Cardinal Health Staffing Network, Inc. v. Bowen*, 106 S.W.3d 230, 235 (Tex. App.—Houston [1st Dist.] 2003, no pet.)).

A temporary injunction is also subject to the form and scope requirements of Texas Rule of Civil Procedure 683, and a temporary injunction "that does not strictly comply with the mandates of Rule 683 is subject to being declared void and dissolved." *In re Luther*, 620 S.W.3d 715, 722 (Tex. 2021) (per curiam). Rule 683 provides:

> Every order granting an injunction and every restraining order shall set forth the reasons for its issuance; shall be specific in terms; shall describe in reasonable detail and not by reference to the complaint or other document, the act or acts sought to be restrained; and is binding only upon the parties to the action, their officers,

agents, servants, employees, and attorneys, and upon those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise.

TEX. R. CIV. P. 683.[6] "Merely stating a party will suffer irreparable harm or has no adequate remedy at law does not meet the Rule 683 requirement for specificity." *Powell v. Baker*, No. 04-22-00653-CV, 2023 WL 5418810, at *12 (Tex. App.—San Antonio Aug. 23, 2023, no pet.) (mem. op.) (quoting *Autonation, Inc. v. Hatfield*, 186 S.W.3d 576, 581 (Tex. App.—Houston [14th Dist.] 2005, no pet.)) (internal quotation marks omitted). The order must provide "the reasons the trial court believes irreparable injury will result if an injunction preserving the status quo pending a trial on the merits is not granted." *Clark v. Hastings Equity Partners, LLC*, 651 S.W.3d 359, 370 (Tex. App.—Houston [1st Dist.] 2022, no pet.); *see also Home Asset, Inc. v. MPT of Victory Lakes Fcer, LLC*, No. 01-22-00441-CV, 2023 WL 3183322, at *2 (Tex. App.—Houston [1st Dist.] May 2, 2023, no pet.) (mem. op.) ("Due to Rule 683's explicit mandate . . . , we cannot infer the reasons for an injunction from the pleadings, evidence presented at the hearing on the application, or the trial court's oral pronouncement." (citations omitted)). Conclusory or circular reasoning explaining the irreparable injury does not meet the requirements of Rule 683. *See, e.g.*, *Arkoma Basin Expl. Co. v. FMF Assocs. 1990-A, Ltd.*, 249 S.W.3d 380, 389 (Tex. 2008); *Home Asset, Inc.*, 2023 WL 3183322, at *3 (providing injunction order was circular in nature where underlying suit concerned appellants' attempted termination of commercial leases and trial court stated in order that denial of access to two of properties would irreparably harm appellees if appellants permitted to terminate leases without explaining why termination of leases would cause irreparable harm).

---

[6] The provision further provides "Every order granting a temporary injunction shall include an order setting the cause for trial on the merits with respect to the ultimate relief sought. The appeal of a temporary injunction shall constitute no cause for delay of the trial." *See id.*

A temporary injunction's "failure to specify—with reasonable detail and clarity and without reference to other documents—the precise conduct prohibited makes the order too uncertain when measured against Rule 683." *Luther*, 620 S.W.3d at 723. Furthermore, an injunction does not comply with Rule 683 if it is not "narrowly drawn and precise" but instead is "so broad as to enjoin a defendant from activities which are a lawful and proper exercise of his rights." *Holubec v. Brandenberger*, 111 S.W.3d 32, 39–40 (Tex. 2003); *see, e.g.*, *RCI Ent. (San Antonio), Inc. v. City of San Antonio*, 373 S.W.3d 589, 604 (Tex. App.—San Antonio 2012, no pet.) (providing acts sought to be restrained must not be overbroad in scope). "Where a party's acts are divisible, and some acts are permissible and some are not, an injunction should not issue to restrain actions that are legal or about which there is no asserted complaint." *RCI Ent.*, 373 S.W.3d at 603. "These requirements 'are mandatory and must be strictly followed[,]'" so the order "informs a party, unambiguously and with a reasonable degree of specificity, of the conduct to be restrained." *Luther*, 620 S.W.3d at 722–23 (quoting *InterFirst Bank San Felipe, N.A. v. Paz Constr. Co.*, 715 S.W.2d 640, 641 (Tex. 1986)).

## C. Analysis

### a. Compliance with Rule 683

Turning first to Appellants' contention the order is void because it failed to comply with Rule 683, Appellants argue it does not: (1) sufficiently describe the alleged irreparable injury or (2) identify the specific actions enjoined.

The temporary injunction identifies the irreparable injury as follows:

> unless the Court issues a temporary injunction enjoining and restraining each of the Defendants, their officers, directors, partners, members, managers, parents, agents, servants, employees, representatives, and those in active concert or in participation therewith and any person acting by or under their authority (individually and collectively, the "Enjoined Parties") from engaging in the acts specified below and enjoining and requiring the Enjoined Parties to act in the manner specified below,

Plaintiffs will suffer substantial, immediate, and irreparable injury, loss, or damage and extreme hardship for which there is no adequate remedy at law, and for which damages alone would not be adequate compensation.

It further appears Plaintiffs will suffer irreparable injury unless the Enjoined Parties are enjoined and restrained immediately because Plaintiffs will continue to be deprived by Defendants of access to their Collateral,[7] which consists of a significant amount of tangible and intangible personal property, including dental and orthodontic equipment, office furniture and equipment, cash proceeds from the Practices,[8] non-cash proceeds from the Practices, and everything else owned by Thang "Kido" Pham and by KP-SA Management, LLC ("KP-SA") prior to its inappropriate transfer of assets and rights to Smiley Dental, PLLC, Smiley Dental Management Company, LLC, Lynh Thy Pham, and the Practice Entities.[9]

. . . .

The Court finds that no other remedy will fully and adequately preserve Plaintiffs' rights and property and that Plaintiffs have no adequate remedy at law because there is a significant risk that Defendants will diminish the Collateral to an extent that Defendants will be unable to compensate Plaintiffs for their damages following the trial of this case.

Applying the requirements of Rule 683, the trial court states the reasons it believes irreparable injury will result: M&M "will continue to be deprived by Defendants of access to their Collateral," consisting "of a significant amount of tangible and intangible personal property, including dental and orthodontic equipment, office furniture and equipment, cash proceeds from the Practices, non-cash proceeds from the Practices, and everything else owned by" Kido Pham and KP-SA "prior to its inappropriate transfer of assets and rights to Smiley." It further provides M&M has "no adequate remedy at law because there is a significant risk that [Appellants] will diminish the Collateral to an extent that Defendants will be unable to compensate [M&M] for their

---

[7] The order defined "Collateral" by referring to the collateral defined in Exhibit A of the petition attached to the injunction order.

[8] The order defined "Practices" as the dental and/or orthodontic offices located at 6735 FM 78, San Antonio, Texas, 933 FM 3009, Schertz, Texas, 4422 De Zavala Road, San Antonio, Texas, 9820 Braun Road, San Antonio, Texas, 3543 Roosevelt Avenue, San Antonio, Texas, and 9530 Potranco Road, San Antonio, Texas.

[9] The court defined "practice entities" as the defendants "SD-933Schertz, P.C., SD-Braun, P.C., SD-DeZavala, P.C., SD-Hwy 78, P.C., SD-Potranco, P.C., and SD-Roosevelt, P.C."

damages following the trial of this case." In other words, M&M will suffer irreparable injury because Appellants have access to the collateral, and there is a significant risk Appellants will diminish the value of the collateral, making it so M&M could not be compensated following a trial in the case. This is more than merely stating M&M will suffer irreparable harm and has no adequate remedy at law because it sufficiently describes what harm will occur and the consequences of such harm. *See Powell*, 2023 WL 5418810, at \*12; *cf. Kotz v. Imperial Cap. Bank*, 319 S.W.3d 54, 56 (Tex. App.—San Antonio 2010, no pet.) (providing Rule requires "only that the order set forth the reasons . . . 'why the court believes the applicant's probable right will be endangered if the writ does not issue.'" (quoting *Transp. Co. of Tex. v. Robertson Transps., Inc*., 152 Tex. 551, 261 S.W.2d 549, 553 (Tex. 1953)) and concluding injunction did not comply where it merely provided intervenors would "suffer irreparable injury in their possession and use of the Subject Property").

Turning to Appellants' contention the injunction does not identify the specific actions enjoined, Appellants argue the order's language permitting use of the collateral only for "reasonable costs required to operate the Practices and any dental or orthodontic tools, instruments, or equipment required to operate the Practices" is insufficient. According to Appellants, the order makes the parties responsible for determining on their own what constitutes "reasonable," including whether the order would be violated by the Practices paying management, refilling any exhausted dental or orthodontic supplies, securing cleaning services, or upgrading equipment. Appellants contend the injunction's breadth therefore enjoins them from lawful and proper activities in exercise of their rights.

Rule 683 provides the injunction "shall describe in reasonable detail . . . the act or acts sought to be restrained." TEX. R. CIV. P. 683. And this court has explained "[a]n injunction must be as definite, clear, and precise *as possible* and, *when practicable*, it should inform the defendant

of the acts he is restrained from doing without calling on him for inferences or conclusions about which persons might well differ and without leaving anything for further trial." *RCI Ent.*, 373 S.W.3d at 603 (emphasis added).

> The injunction provides Appellants are:
>
> (a) enjoined and restrained from: (i) transferring, diverting, or otherwise giving control over the Collateral—excluding reasonable costs required to operate the Practices and any dental or orthodontic tools, instruments, or equipment required to operate the Practices—to any person or entity other than KP-SA or Plaintiffs; and (b) enjoined and required to: (i) return all Collateral—excluding reasonable costs required to operate the Practices and any dental or orthodontic tools, instruments, or equipment required to operate the Practices—in any of their possession to KP[-]SA or Plaintiffs; and (ii) allow Plaintiffs to fully inspect and inventory the Collateral[.]

In other words, Appellants may not "transfer[], divert[], or otherwise giv[e] control over the Collateral" to anyone other than KP-SA or plaintiffs and must "return all Collateral" except reasonable costs required to operate the Practices to KP-SA or plaintiffs. Collateral is defined in the order as (1) ownership and operational interest of KP-SA, (2) Kido Pham's "share of profits; distributions, income and surplus" from KP-SA, and (3) all of Kido Pham and KP-SA's right, title, and interest in their personal property, fixtures, leasehold improvements, trade fixtures, and equipment. Succinctly, Appellants can apply reasonable costs to operating the Practices, but may not use any of the ownership and operation interests, retain profits or other income from the Practices, or use or retain any right, title, and interest in the Practices or the property at the Practices. This level of specificity meets Rule 683's requirement of "reasonable detail," and we cannot conclude it is not "narrowly drawn and precise" or "so broad as to enjoin a defendant from activities which are a lawful and proper exercise of his rights." *See* TEX. R. CIV. P. 683; *Holubec*, 111 S.W.3d at 39–40.

**b. The Required Showing in Support of the Injunction**

Appellants further argue the trial court abused its discretion by granting the temporary injunction because M&M failed to make each of the required showings for a temporary injunction: (1) a cause of action against the party to be enjoined; (2) a probable right to recover on that claim after a trial; and (3) a probable, imminent, and irreparable injury absent the temporary injunction. *Harley Channelview Props.*, 2024 WL 2096556, at *2. Specifically, Appellants contend M&M failed to plead a viable cause of action against them, and M&M failed to make the required showing of a probable right to recover on a claim against them because they offered no evidence of the claims against Appellants at the hearing. Appellants further contend M&M failed to make the required showing of a probable, imminent, and irreparable injury absent the temporary injunction because they: (1) failed to identify how or why any harm to the collateral was not compensable by monetary damages, (2) failed to identify how the collateral is otherwise unique or irreplaceable, and (3) failed to show how the injury would be irreparable by appellants' insolvency—a basis to conclude the injury would be irreparable. *See Blackthorne v. Bellush*, 61 S.W.3d 439, 444 (Tex. App.—San Antonio 2001, no pet.).

**i. The Temporary Injunction Hearing**

At the hearing, Dr. Jeffrey Malone, the president of M&M, testified he sold the orthodontic practices to KP-SA in 2016 for $3.5 million pursuant to an Asset Purchase Agreement collateralized by everything sold to KP-SA including the dentist offices, the patients, the accounts receivable, and any income produced by the dentist offices. Dr. Malone testified KP-SA is "controlled" by Kido Pham. He testified Kido Pham made approximately three payments in 2017 pursuant to the agreement and then stopped making payments thereafter. In August 2018, the parties modified the purchase agreement to permit KP-SA to make interest only payments for one

year and to pay penalties for the missed payments beginning in late 2017. However, there were additional missed payments, and Dr. Malone testified the current outstanding balance in connection with the sale of the orthodontic practices was approximately $5.6 million, including interest.

Dr. Malone testified Dr. Lynh Pham was the president and owner of Smiley. Kido Pham was also an owner of Smiley.[10] Smiley operated the orthodontic practices through individual professional corporations, the Practices. Dr. Lynh Pham was the sole director and registered agent for each of the Practices.[11] Dr. Pham was the "practicing dentist of record for all six locations."[12] Dr. Malone further testified that before the deal to sell the orthodontic practices, he "toured all the practices with Dr. Pham." He explained Dr. Lynh Pham was the "holder of all the financial information" for the orthodontic practices after the deal. Dr. Malone further explained he "had ongoing discussions with Dr. [Lynh] Pham over the course of 2016" until the commencement of the lawsuit.

Dr. Malone testified he would not have signed the Asset Purchase Agreement without the security agreement for the collateral, and because he signed the Asset Purchase Agreement, some of the "dental and orthodontic equipment [] has been removed from . . . the six" orthodontic practice locations.

---

[10] A personal financial statement admitted into evidence provides Kido Pham is a partner in Smiley, but his ownership was "under divorce decree."

[11] A management agreement admitted into evidence at the hearing confirms this, showing KP-SA and Smiley were joint managers of at least one of the Practices—SD-Braun P.C. The agreement provided Smiley would receive 15% of S.D. Braun's "net after-tax profit" for its management.

[12] He also testified Kido Pham and Dr. Lynh Pham had an ongoing business relationship despite their divorce. But he later conceded he "d[id]n't know anything" about their personal relationship.

### ii. Analysis

Reviewing the first and third requirements, "to show a probable right of recovery, the applicant must plead a cause of action and present some evidence that tends to sustain it." *Intercontinental Terminals*, 354 S.W.3d at 897. "The evidence must be sufficient to raise 'a bona fide issue [ ] as to [the applicant's] right to ultimate relief.'" *Id.* (quoting *183/620 Grp. Joint Venture v. SPF Joint Venture*, 765 S.W.2d 901, 904 (Tex. App.—Austin 1989, writ dism'd w.o.j.)).

M&M sued Appellants for conversion, tortious interference with existing contract, and civil conspiracy. Turning first to the conversion claim, a party seeking to establish a claim of conversion must show: (1) they "owned, possessed, or had the right to immediate possession of personal property"; (2) the party accused of conversion "unlawfully and without authorization assumed and exercised control over the property to the exclusion of, or inconsistent with, [the claimant's] rights"; and (3) [the claimant] suffered injury." *Truitt v. Hatfield*, No. 02-21-00004-CV, 2021 WL 5742083, at *5 (Tex. App.—Fort Worth Dec. 2, 2021, no pet.) (mem. op.).

Here, M&M presented some evidence it had the right to immediate possession of the collateral, and it suffered injury. M&M showed it entered into an agreement with Kido Pham and KP-SA, and Kido Pham and KP-SA defaulted. Dr. Malone also testified he was owed more than $5 million as a result. In addition, M&M offered some evidence Smiley unlawfully and without authorization assumed and exercised control over the collateral inconsistent with M&M's rights. Specifically, Dr. Malone testified some of the collateral had been removed from KP-SA. Specifically, some of the equipment had been removed from the orthodontic practices, and M&M offered some evidence Smiley accepted management fees from the orthodontic practices. In other words, some evidence showed Kido Pham—the owner of Smiley, who also owned KP-SA, breached the Asset Purchase Agreement and thereafter unlawfully and without authorization

assumed and exercised control over the collateral inconsistent with M&M's rights by providing some of the collateral from the orthodontic practices to Smiley.

M&M also presented some evidence Dr. Lynh Pham and the Practices unlawfully and without authorization assumed and exercised control over the collateral to the exclusion of, or inconsistent with, M&M's rights. In addition to testifying some of the collateral being removed from the practices, Dr. Malone testified Dr. Lynh Pham was the practicing dentist for all of the orthodontic practice locations and responsible for all of the financial information for the orthodontic practices. And the hearing evidence shows she was one of the owners of Smiley, the sole director of the Practices, and managed the Practices through Smiley. Dr. Malone also testified Kido Pham and Dr. Lynh Pham had an ongoing business relationship. As a result, there was at least some evidence Dr. Pham and the Practices unlawfully and without authorization assumed and exercised control over the collateral to the exclusion of, or inconsistent with, M&M's rights through Smiley and the Practices; thus, there is some evidence supporting the trial court's conclusion M&M pled a cause of action.

To show whether there was a probable, imminent, and irreparable injury, an applicant must "prove the defendant has attempted or intends to harm the plaintiff in the future." *Camp Mystic*, 399 S.W.3d at 276. As noted above, some evidence showed Smiley, Dr. Lynh Pham, and the Practices unlawfully and without authorization assumed and exercised control over the collateral to the exclusion of, or inconsistent with, M&M's rights. Moreover, Dr. Malone testified some of the collateral under the agreement, in the form of dental and orthodontic equipment, had already been removed from the six practices. Reviewing the evidence in the light most favorable to the trial court's ruling, drawing all legitimate inferences from the evidence, and deferring to the trial

court's resolution of conflicting evidence, the trial court was entitled to conclude this same evidence constituted some evidence Appellants attempted to harm M&M. *See id.*

However, for an injury to be irreparable, the applicant must show there is no adequate remedy at law. In other words, the applicant must show they "cannot be adequately compensated in damages or [that] the damages cannot be measured by any certain pecuniary standard." *Harley Channelview Props.*, 2024 WL 2096556, at *2 (quoting *Butnaru*, 84 S.W.3d at 204) (internal quotation marks omitted). M&M contend they made this showing because they demonstrated Kido Pham, KP-SA, and Appellants were potentially insolvent at the time of trial. However, the hearing evidence does not demonstrate Appellants—Dr. Lynh Pham, Smiley, and the Practices—were insolvent. Furthermore, Dr. Malone testified that "not so long ago" KP-SA and Smiley "walked out on" four of the offices, "and the current owners of the building locked them out." But there is no hearing evidence showing why the offices were "walked out on" by Smiley, and the action does not establish Dr. Lynh Pham, Smiley, or the Practices—entities established to run the orthodontic practice locations—were insolvent. Furthermore, the evidence surrounding the real estate loans is less than clear.

Nevertheless, "[d]isruption to a business can be irreparable harm." *Frequent Flyer Depot, Inc. v. Am. Airlines, Inc.*, 281 S.W.3d 215, 228 (Tex. App.—Fort Worth 2009, pet. denied). "Moreover, assigning a dollar amount to such intangibles as a company's loss of clientele, goodwill, marketing techniques, and office stability, among others, is not easy." *Id.* The hearing evidence shows there was disruption in the business of at least four of the six dental practice locations resulting from Appellant's actions. *See id.* Moreover, the collateral of the business included "all general intangibles" relating to the property comprising the collateral. *See id.* Reviewing the evidence in the light most favorable to the trial court's ruling, drawing all legitimate

inferences from the evidence, and deferring to the trial court's resolution of conflicting evidence, some evidence reasonably supports the trial court's conclusion M&M would be irreparably harmed. *See id.*

### c. Mandatory Provisions of the Temporary Injunction

Finally, Appellants contend the trial court abused its discretion because the mandatory portion of the injunction altered the status quo and was therefore void. The injunction provides Appellants, along with Kido Pham and KP-SA "are: . . . (b) enjoined and required to: (i) return all Collateral—excluding reasonable costs required to operate the Practices and any dental or orthodontic tools, instruments, or equipment required to operate the Practices—in any of their possession to KPSA or Plaintiffs."

"A temporary injunction's purpose is to preserve the status quo of the litigation's subject matter pending a trial on the merits." *Butnaru*, 84 S.W.3d at 204. "The status quo is the last, actual, peaceable, non-contested status which preceded the pending controversy.'" *Tomczak*, 2022 WL 17981577, at *4 (quoting *Clint Indep. Sch. Dist. v. Marquez*, 487 S.W.3d 538, 555 (Tex. 2016)) (internal quotation marks omitted). "If an act of one party alters the relationship between the party and another, and the latter contests the action, the status quo cannot be the relationship as it exists after the action." *Williams v. Wildwood Dev. Co., Inc.*, No. 10-22-00250-CV, 2023 WL 2527985, at *4 (Tex. App.—Waco Mar. 15, 2023, no pet.) (mem. op.) (quoting *Benavides ISD v. Guerra*, 681 S.W.2d 246, 249 (Tex. App.—San Antonio 1984, writ ref'd n.r.e.)).

A temporary mandatory injunction—i.e., an injunction that "requires conduct" instead of "prohibiting conduct"—alters the status quo. *See Veterinary Specialists of N. Tex., PLLC v. King*, No. 05-21-00325-CV, 2022 WL 406095, at *4 (Tex. App.—Dallas Feb. 9, 2022, no pet.) (mem. op.). For a mandatory injunction, the applicant must show the 'mandatory order is necessary to

prevent irreparable injury or extreme hardship.'" *Id.* (quoting *Retail Servs. WIS Corp. v. Crossmark, Inc.*, No. 05-20-00937-CV, 2021 WL 1747033, at \*7 (Tex. App.—Dallas May 4, 2021, pet. denied) (mem. op.)). "The general rule is that the peaceable possession of property, personal or real, . . . will not be transferred by temporary mandatory injunction because this would change the status quo, and might anticipate the whole case by giving full relief without a trial." *Downtown McKinney Partners, LLC v. InterMcKinney, LLC*, No. 05-22-00501-CV, 2023 WL 4101245, at \*4 (Tex. App.—Dallas June 21, 2023, pet. denied) (mem. op.) (alteration in original) (quoting *Tex. Co. v. Watkins*, 82 S.W.2d 1079, 1080 (Tex. App.—Waco 1935, no writ)) (internal quotation marks omitted); *see, e.g. Clint Indep. Sch. Dist.*, 487 S.W.3d at 557 ("[T]he parents' contention that the district's current distribution methodology, which they concede has been in place for years, is illegal 'is the central question of the suit,' and the parents cannot obtain a temporary injunction forcing the district to change its distribution methodology before a trial on the merits.").[13]

Dr. Malone testified the last, actual, peaceable, non-contested status which preceded the pending controversy was when he received payments pursuant to the Asset Purchase Agreement. *See Wildwood Dev. Co., Inc.*, 2023 WL 2527985, at \*4. The trial court, therefore, could have concluded the provision was not a mandatory injunction but a preservation of the status quo—KP-SA, or Plaintiffs' retention of the collateral prior to the breach of the agreement for non-payment. *See Downtown McKinney Partners*, 2023 WL 4101245, at \*4; *Veterinary Specialists*, 2022 WL 406095, at \*6 (concluding mandatory injunction provision actually preservation of status quo). Even if this were not the status quo, in order to show a mandatory injunction is proper, a party must demonstrate irreparable injury or extreme hardship. *See Veterinary Specialists*, 2022 WL

---

[13] The granting of a mandatory injunction is within the discretion of the trial court. *See Hartwell v. Lone Star, PCA*, 528 S.W.3d 750, 768 (Tex. App.—Texarkana 2017, pet. denied).

406095 at *4. As demonstrated above, some evidence supported the trial court's conclusion of irreparable harm to M&M.

Moreover, "a mandatory provision in a prohibitive injunction will not change the nature of an otherwise prohibitive injunction." *Hartwell*, 528 S.W.3d at 768. Here, the injunction is generally prohibitive because it enjoins Appellants from "transferring, diverting, or otherwise giving control over the Collateral to any person or entity other than KP-SA or Plaintiffs." *See id*. Subsection (b) is incidental to this prohibition because it preserves the status quo, i.e., M&M's right to collateral in the event of a breach of the asset purchase agreement by requiring Appellants to return collateral to KP-SA. *See id.*; *see also Tri-Star Petroleum Co. v. Tipperary Corp.*, 101 S.W.3d 583, 592–93 (Tex. App.—El Paso 2003 pet. denied) ("While the order requires Tri–Star to take some affirmative action in allowing Tipperary to assume operation of the Project, the action required on Tri–Star's part is incidental to its non-interference with the successor Operator's assumption of control in the interim."). We therefore cannot conclude the mandatory provision is improper.

Accordingly, viewing the evidence in the light most favorable to the injunction, drawing all legitimate inferences from the evidence, and deferring to the trial court's resolution of conflicting evidence, we cannot conclude the trial court abused its discretion by issuing the temporary injunction. *See Six Bros. Concrete Pumping, LLC*, 2022 WL 17981577, at *3.

### CONCLUSION

We affirm the trial court's August 2, 2023 temporary injunction order.

Luz Elena D. Chapa, Justice

- 18 -